## MICHAEL O'CONNELL v. THOMAS M. DUKE.

The question in this case is, whether the appellee, who had sold the appellant a tract of land containing in its boundaries a surplus, can recover such surplus, or compensation for it in money: *Held*, that each case must depend upon its own peculiar circumstances, and that in this case he could recover the value of the excess, or have partition should the plaintiff refuse to pay for that excess at the rate per acre of the sale.

It is well settled, as a general rule, that where parties have contracted in ignorance or mistake of a fact material and essential in the inducement to and formation of the contract, which mistake injuriously affects the rights and interests of one of the parties under the contract, a court of equity will grant relief against the consequences of the mistake.   This general principle applies not only to cases where there has been a studied suppression or concealment of material facts by one of the parties, which would amount to a fraud, but also to many cases of innocent ignorance and mistake on both sides.   (Paschal's Dig., Art. 997, Note 420.)

After reviewing the cases in *extenso*, the court adopted the rules in Talbot v. Harrison, 2 Dana, 258, viz: 1. Sales strictly and essentially by the tract, without reference in the negotiations or in the consideration to any designated or estimated quantity of acres.   2. Sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description,

and under such circumstances or in such a manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract. 3. Sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversation of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might reasonably be calculated on as within the range of ordinary contingency."

The principle on which the rule of law is founded that gives to the purchaser the excess in ordinary cases is his liability to loss in case of a deficit. His hazard of a loss is the consideration he pays for the excess. If that consideration be wanting, he must rely on his express contract, if he would claim an excess.

APPEAL from Matagorda. The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

The appellee brought suit in the district court to rescind a sale of a tract of land made by him to the appellant, on the ground that a mistake had been made at the time of the conveyance as to the quantity contained in the tract, and that the defendant had procured a second conveyance by fraudulent misrepresentations and concealment. The defendant demurred to the petition, and also answered by a full narrative of the history of the transaction. As the facts appeared upon the trial of the cause, and the same questions then arose, it is unnecessary here to recapitulate the special averments of the petition or answer. The demurrer was overruled, and the parties proceeded to a trial before a jury.

It was shown by the testimony on the trial, that the plaintiff, Duke, had obtained his head-right league as a colonist in Austin's colony, on Caney creek, in the present county of Matagorda; that he had sold most of it, but, at the time of his removal from Matagorda county to Refugio, still retained a portion, estimated by him to be more than seven hundred and fifty acres; that in February, 1858, he made a bargain for the sale of the balance then unsold, to the defendant, O'Connell, and both parties went to the county clerk of Refugio county to have the deed of con-

veyance prepared; that Duke and O'Connell both stated to Shelley, the county clerk, that the bargain was to sell all that remained unsold of the head-right league, which was supposed to be more than seven hundred and fifty acres, but, if it fell short of seven hundred and fifty acres, the vendor was to refund a proportionate part of the purchase-money; that Duke then said that he supposed there would be a few acres over that amount, but he did not care for them; that a deed was drawn by Shelley in conformity to the instructions of the parties, the destription of the boundary of the tract of land being taken from Duke; that this deed was executed by Duke, delivered to O'Connell, and recorded in Matagorda county, being dated February 3, 1858; that this deed, produced on the trial by the defendant, conveyed a tract of land, " being a part or portion of the head-right league and labor of land" belonging to the grantor, "consisting of seven hundred and fifty or more acres of land, and bounded as follows, to wit:" on the east by Caney; on the upper side by the part or portion of the said head-right tract of land sold and now owned by Dr. Pearson; on the lower side by that part or portion of the said tract of land surveyed for and belonging to the heirs of J. M. Duke, and on the back line by the prairie in that direction;" that this sale was made for the sum of $2,500, of which $2,000 was paid at the time, and the remainder was to be paid in mares, in June, 1858; that the mares were accordingly delivered at the time specified; that in November following the defendant employed Collingsworth to survey the tract conveyed by him, and it was found that this tract, surveyed according to the description in the deed to O'Connell, contained one thousand one hundred and twenty-two acres; that this excess over the seven hundred and fifty acres was occasioned by the fact that the Duke league exceeded four thousand four hundred and twenty-eight acres by the amount of this excess; that the defendant told Collingsworth, at the time of the sur-

vey, that by the bargain he was to have all the excess; that when the deed from Duke was put on record in Matagorda county, the defendant consulted with Braman, the district clerk, as to its sufficiency in form, and Braman told him that, as it stood, it would appear that he had not paid all the purchase-money, and advised him, therefore, either to obtain a new deed, reciting the full payment of the consideration, or such an acknowledgment of the payment as might be recorded; that in November, 1858, the defendant met the plaintiff at the house of the latter in Refugio county, and in the course of a conversation about the land, expressed a doubt whether it would hold out in quantity, and the plaintiff, to show that it would, made a computation of the amount which had been sold previously, which he estimated at three thousand six hundred and fifty-four acres, and of the remainder, which he ascertained by deducting this sum from four thousand four hundred and twenty-eight acres, leaving seven hundred and seventy-four, and then remarked that he didn't care for this excess, that it would be of no service to him, and that the defendant could have it.

The defendant said that a survey of the land would be necessary, and asked plaintiff if he would share the expense; he also requested plaintiff to give him another deed, which was agreed to; that, on the 27th of November, both parties went to Refugio to have the new deed prepared and executed; it was drawn up by Shelley as the first, and conveyed "the following-described tract or parcel of land," "consisting of seven hundred and fifty acres of land, or more, or all that remains of the said league of land unsold," with particular field-notes of the boundaries. This deed recited the full payment of the purchase-money, and, as originally executed by the plaintiff, did not contain the field-notes or special description of boundary, but contained an agreement that these field-notes were afterwards to be inserted after a survey of the land; that, after the

plaintiff had left Shelley's office, the defendant handed the
field-notes of the survey to Shelley, and requested him to
insert them in the deed; this was accordingly done, and
the deed thus completed was recorded in Matagorda
county; that, at the time of the execution of this last
deed, the plaintiff expressed his intention to be, to convey
or sell to the defendant all the unsold remainder of the
league, and said that he knew it would overrun seven
hundred and fifty acres by a few acres.   It was also proved
by William Prissick that he had never made the survey
referred to in the deed of February, 1858.

Upon this testimony the court, of its own motion, re-
quired the jury to find on several issues: first, whether the
parties, at the time of executing the deed of February,
1858, were under a mistake as to the quantity of land con-
tained in said deed; second, if so, what was the amount of
the difference between the supposed and real quantity;
third, whether the plaintiff had any further information
about the quantity, in November, 1858, when the second
deed was executed; fourth, whether the defendant, at the
same time, had ascertained by a survey the actual quantity;
fifth, whether the defendant procured the deed of Novem-
ber 27, 1858, by fraudulently concealing or misrepresenting
the fact that he had surveyed the land and knew the quan-
tity; and, sixth, what amount and at what time did the
defendant pay for the land.

To guide the jury in their finding on these issues, the
district court gave them special instructions.   On the first
issue, the jury were instructed that, if they believed that
the parties to the deed did not suppose or anticipate so
great an excess over seven hundred and fifty acres as
really existed, they would find that there was a mistake.
The jury so found.   As to the second issue, the court in-
structed the jury to deduct the number of acres which the
parties supposed there might be in the tract at the time
of the execution of the deed from the number actually

contained in the tract. The jury found three hundred and forty-eight acres, by deducting seven hundred and seventy-four from one thousand one hundred and twenty-two. As to the fifth issue, the jury were instructed that, if the defendant, in November, 1858, falsely represented to the plaintiff that no survey of the land had been made, and by means of these representations procured the second deed, the jury would find that this deed was obtained by fraud practiced on the plaintiff. The jury found "that the defendant kept the field-notes and the survey concealed from the plaintiff." On the sixth issue, the jury found that the defendant had paid $2,500 for the land, and found the third and fourth issues in the affirmative.

The defendant requested the court to put to the jury the following issue: "Had or had not the plaintiff, at and before the making of the first deed of February 3, 1858, the power to ascertain, by reasonable diligence and care, the amount in acres of the land sold by him, and did he or not use that reasonable diligence and care to ascertain that amount, or did he or not voluntarily neglect to do so." The court refused to put this issue, and the defendant excepted to this refusal, as well as to all the issues actually given.

The defendant requested the court to give six instructions, all of which were refused. As the principles of law to which these instructions were intended to apply arise as well upon the judgment of the court on the special verdict, it is unnecessary to refer to them more particularly. The defendant moved for a new trial, and also for a judgment *non obstante veredicto*, both of which motions were overruled, and a decree was rendered, not for a recision of the contract, but requiring the defendant to pay into court for the plaintiff the sum of $1,025 04, with interest from February 3, 1858, and in default of such payment, within sixty days, providing for a partition of the land by commissioners, who were to set off to the plaintiff $\frac{348}{1122}$

of the tract, according to quantity, quality, and value.   The
defendant appealed.

*Allen & Hale,* for appellant.—The counsel for the appel-
lant rely upon the following positions and authorities:

1. That a court of equity will relieve against a mistake
only in a clear case, and on convincing evidence. (1 Story's
Eq. Jur., § 157.)   And then the mistake must have been
in respect to some matter which was material to the bar-
gain, and formed a principal inducement to the sale or
purchase.   (1 Story's Eq. Jur., §§ 141–145.)

Thus, if the subject about which the parties contracted
was not in existence at the time, or was of a different
character from what both supposed, the bargain will be
rescinded; but when only one of the parties has formed a
different opinion of the value, quality, or quantity of the
subject of the contract, from what it afterward turns out
to be, a court of equity will not correct his error.   (Se-
gur v. Tenley, 11 Conn., 134;  Rogers v. Garnett, 4 Monr.,
269.)

In the present case, both parties were treating about a
known and existing object: a tract of land which is, in fact,
situated and bounded as both supposed at the time; and,
if Duke supposed that the land he was selling was less in
quantity and value than it afterwards turned out to be, it
was a mistake in his estimate rather than in fact.   Both
conveyances, and all the parol evidence, show that Duke
intended to convey all the land between certain bounda-
ries, whether it contained more than seven hundred and
fifty acres or not; or, rather, they show that he intended to
convey a tract containing an indefinite number of acres,
but certainly more than seven hundred and fifty, at a fixed
price.   The excess over seven hundred and fifty acres, and
the chance of getting a better bargain than either of them
expected, may have been one inducement to O'Connell to
make the purchase.   There is nothing to show that O'Con-

nell had the same estimate, as to the contents of the tract, as Duke entertained, and he may have entered into the contract with the hope of securing the advantage of excess. But whatever may have been the different estimates of the parties, it is clear that one sold and the other received the whole of a tract of land lying within definite boundaries. In such a case, a mistake in the calculation of the contents could not affect the substance of the bargain. (Boar v. McCormick, 1 Serg. & R., 166; Large v. Penn, 6 Serg. & R., 487; Galbraith v. Galbraith, 6 Watts, 117; Frederick v. Campbell, 13 Serg. & R., 140; Joliffe v. Hile, 1 Call., 301; Fleet v. Hawkins, 6 Mumf., 188; Hersey v. Kimbortz, 6 Barr, 129; Smith v. Evans, 6 Binn., 102; Mann v. Pearson, 2 Johns., 37; Taylor v. Fleet, 4 Barb., 95.)

Some decisions appear to countenance the idea, that where the excess in quantity over the estimated amount is considerable or enormous, a court of equity would interfere, notwithstanding the clearest intention to make a risking bargain. But this doctrine has arisen and been fostered by the eagerness of courts of chancery to enlarge their jurisdiction, rather than by a consistent adherence to principle; and the contrary view is sustained by decisive authority. (Stebbins v. Eddy, 4 Me., 419, 420; O'Kill v. Whittaker, 2 Phill. Eng. Ch., 338; Marvin v. Bennett, 26 Wend., 169; Hatch v. De la Garza, 22 Tex., 177.)

2. It is clearly proved, and indeed admitted, that the actual excess in the tract sold to O'Connell arose entirely from an excess in the size or contents of the Duke league. It is a matter of notoriety that the surveys of land in this country, under the former government, generally exceed the quantity called for, and a sale will not be reformed on account of the occurrence of such an excess. It is a legitimate advantage, which might have been expected by both parties. (Vowles v. Craig, 8 Cranch, 371.)

And in the present case Duke could not complain that he had lost anything by selling more than he ought to

have received from the government. (Vowles v. Craig, 8 Cranch 371.)

3. The extraordinary power claimed by courts of equity to reform contracts of purchase has been usually exercised in cases of executory, and not executed contracts. (2 Kent's Com., 487; 2 Story's Eq. Jur., § 693.) And it may be inferred, that where the conveyance had passed, and no further act was to be done, the transaction could only be attacked by showing an unquestionable mistake in the subject and substance of the sale. (Smith v. Evans, 6 Binn., 106, 107; King v. Hamilton, 4 Pet., 311–329; Farmers' Bank v. Galbraith, 10 Barr, 490.)

4. Whatever may have been the motives or conduct of O'Connell, in obtaining the second deed, they cannot affect the construction or operation of the first. The deed of November, 1858, was merely a further assurance of what was already done, and, even if it were entirely canceled, the right to the land would remain unchanged. But even in regard to the second deed, the plaintiff cannot contend that he was misled by the defendant. The jury have found, not any fraudulent representations, but simply the concealment by O'Connell of the fact that a survey had been made. Now, it is clear that O'Connell, as the purchaser, was under no obligation to disclose this fact. It was not material at the time the second deed was executed, nor was there any confidential relation on the part of O'Connell which would at any time have made the disclosure necessary. (Story's Eq., Jur., §§ 204–209; Laidlaw v. Organ, 2 Wheat., 178; Kutzing v. McElrath, 5 Barr, 467; Dart's Vendors and Purch., § 46.)

5. The court below erred in refusing to put to the jury the issue requested on the part of the defendant. It was material to know whether the plaintiff could, with reasonable diligence, have ascertained the fact about which he committed the alleged mistake. If he could have done

so, then his claim to the indulgence of a court of equity ceases. (1 Story's Eq. Jur., §§ 146, 149, 151, 199, 200*a*; Beaufort v. Neeld, 12 Clark & Fin.; Taylor v. Fleet, 4 Barb., 95; Kutzing v. McElrath, 5 Barr, 467; Robertson v. Smith, 11 Tex., 211; Goss v. McLaren, 17 Tex., 107; Smith v. Fly, 24 Tex., 345.) The refusal of this issue, and the corresponding instruction, implies that the court below was of opinion, that no negligence or indifference, as to the contents of the land, on the part of Duke, could affect his right to relief, if, through such negligence, he was led to an actual mistake of fact. Such a doctrine is wholly indefensible.

6. The facts found by the jury do not, in any respect, sustain a decree in favor of the plaintiff; but if they would in themselves authorize the decree which was rendered, still it was not in the power of the court to make a decree not consistent with the prayer of the petition. (Edgar v. Galveston City Co., 21 Tex., 333–334.) The petition asked a recision of the sale, and as no relief inconsistent with that could be granted, and as that relief was not warranted either by the allegations or the facts, the court should have rendered judgment on the motion of the defendant notwithstanding the verdict.

7. But, in the most limited point of view, the decree is incorrect, because, first, it gives interest on the increased purchase-money, although the defendant was not in fault; and, second, it requires the excess to be taken off, according to quantity, quality, and value, instead of leaving it to the vendee to set it off wherever he chose, at either side or end. (Whaley v. Elliott, 1 A. K. Marsh., 343.)

*W. P. Ballinger*, for appellee. The following authorities are referred to on the question involved in this case: (1 Story's Eq. Jur., § 141, 144*a;* 4 Kent's Com., 467, note.)

The subject has been very much considered in Virginia

and Kentucky. A review of the Virginia cases, and the rule as settled in that State, with the reasons upon it, will be found in Blessing v. Beatty, 1 Rob., 287.

The Kentucky cases are reviewed, and the subject placed on grounds that we conceive command the assent of this court, in Harrison v. Talbot, 2 Dana, 258; and in the still later case of Grundy's Heirs v. Grundy *et al.*, 12 B. Monr.

(See the rule in Maryland, Smallwood v. Hutton, 4 Md. Ch. Decis., 95, cited 13 U. S. Dig., Eq., No. 53.)

*John W. Harris* also furnished a brief for the appellee.

COKE, J.—The question in this case is, whether the appellee, Duke, who had sold the appellant, O'Connell, a tract of land containing in its boundaries a surplus, can recover such surplus, or compensation for it in money? It is unnecessary to consider the various assignments of error in detail, because this one question embraces substantially all the points made in them.

"It is well settled, as a general rule, that where parties have contracted in ignorance or mistake of a fact material and essential in the inducement to and formation of the contract, which mistake injuriously affects the rights and interests of one of the parties under the contract, a court of equity will grant relief against the consequences of the mistake. This general principle applies not only to cases where there has been a studied suppression or concealment of material facts by one of the parties which would amount to a fraud, but also to many cases of innocent ignorance and mistake on both sides." (1 Story Eq. Jur., § 141; Hill v. Buckley, 17 Ves., 394.)

In cases where relief is granted, it is only where the mistake is made out clearly and satisfactorily, and this upon the ground, that the contract, as it is, ought to be treated as a full and correct expression of the intention of the parties, until the contrary is established with reasonable certainty.

When it is so established, and the right of the injured party is not impaired by a failure on his part to use proper precaution and diligence, the relief is usually granted. Contracts for the sale of land are not an exception to this general rule, but are as much amenable to its principles as other contracts are.

As was said by Chief Justice Boyle, delivering the opinion of the supreme court of Kentucky, in Young v. Craig, 2 Bibb, 270: "In contracts of this character, the same good faith is required, and the same responsibility attaches to its violation, which law and reason prescribe in every description of contract. If, through fraud or gross and palpable mistake, more or less land should be conveyed than was in the contemplation of the seller to part with or the purchaser to receive, the injured party would be entitled to relief in like manner as he would be for an injury produced by a similar cause in a contract of any other species."

The apparent conflict and discrepancies in the adjudicated cases arise not from a denial of or a failure to recognize this general principle, but from the difficulty of its practical application in particular cases. It has long since been settled, that the relative extent of the surplus or deficit cannot furnish, per se, an infallible criterion in each case for its determination, but that each case must be considered with reference not only to that, but its other peculiar circumstances. The conduct of the parties, the value, extent, and locality of the land, the date of the contract, the price, and other nameless circumstances, are always important, and generally decisive. In other words, each case must depend upon its own peculiar circumstances and surroundings.

It is evident that, in a sale per acre, much less variation from the quantity intended to be conveyed would be indicative of a mistake than where a specific tract is sold by metes and bounds, the quantity of acres being mentioned merely as matter of description. But the impracticability

of ascertaining the exact amount in a tract with precision, the different results that are produced by different surveyors on account of roughness of ground, variation of instruments, &c., will render a small surplus, or deficit, however exactly the parties may have intended to be confined to a specific quantity, ineffectual as a basis for relief; because parties are presumed to have contracted with reference to such ordinary contingencies, and to have accepted the hazard of gain or loss. On the other hand, of where a surplus is evidently contemplated by the terms of the contract, but it turns out that the surplus exceeds considerably or greatly what the proof shows was contemplated by the parties, and such excess, if known, would have materially influenced the contract, which is to be judged of from the proof, this is a mistake against which relief will ordinarily be granted, unless the injured party has been guilty of culpable negligence. In these cases, the inquiry is first to be made whether the parties have made a mistaken estimate of the quantity which materially influenced the price, and then whether, notwithstanding such mistaken estimate, they have waived the right to compensation by an acceptance of the hazard of gain or loss by the estimate. Whenever the excess or deficiency is palpable and unreasonable, and such as is shown not to have been in the contemplation of the parties, relief will be granted, unless the proof shows that the hazard of gain or loss, whatever it might be, was accepted and entered into the contract. (Young v. Craig, 2 Bibb, 270; Grundy's Heirs v. Grundy, 12 B. Monr., 271.)

Contracts for the sale of land have been considered with reference to the question under discussion to be of two descriptions: first, where the sale is of a specific quantity, which is usually denominated a sale by the acre; second, where the sale is of a specific tract, by name or description, each party risking the quantity. This is called a sale in gross. In the well-considered case of Harrison v.

Talbot, 2 Dana, 258, the supreme court of Kentucky, after an able review of the authorities, and an elaborate discussion of the principles involved, reached the conclusion that, "Sales in gross may be divided into various subordinate classifications: first, sales strictly and essentially by the tract, without reference, in the negotiation or in the consideration, to any designated or estimated quantity of acres; second, sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner, as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract; third, sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might reasonably be calculated on as within the range of ordinary contingency; fourth, sales which, though technically deemed and denominated sales in gross, are in fact sales by the acre, and so understood by the parties. Contracts belonging to either of the two first-mentioned classes, whether executed or executory, should not be modified by the chancellor, when there has been no fraud. But in sales of either of the latter kinds, an unreasonable surplus or deficit may entitle the injured party to equitable relief, unless he has, by his conduct, waived or forfeited his equity."

The court of appeals of Virginia have, in numerous cases, held substantially the same doctrine. (Blessing's Administrators v. Beatty, 1 Rob., 302–303; Quesnel v. Woodlief, 6 Call., 218; Joliffe v. Hile, 1 Call., 301; Duvals v. Ross, 2 Munf., 290.) This doctrine is so well supported on principle, so thoroughly imbued with a spirit of broad

and comprehensive equity, and so strongly characterized by practical wisdom, in its adaptation to the exigencies of our society, where transactions to which it is applicable are of daily occurrence, that it commends itself to our unqualified approbation.

An application of these principles to the facts of this case, as found by the jury, in response to the special issues submitted to them by the court, is decisive of the correctness of the judgment. The deed executed by Duke to O'Connell, on the 3d of February, 1858, conveyed a tract of land, described by metes and bounds, estimated to contain "seven hundred and fifty acres, or more." In the deed it is said to be all of a tract of "eight hundred and fifty acres, or more," except one hundred acres previously sold off. During the negotiation between the parties, Duke repeatedly said, he supposed there would be an excess of twenty or twenty-four acres, but that it was a small matter, which would do him no good, and that he was willing for O'Connell to have it. The surplus contemplated by Duke when he made the sale was twenty-four acres. This accounts for the language of the deed, "seven hundred and fifty acres, or more." O'Connell took no hazard, but bound Duke in the deed to refund the purchase-money in proportion to the deficit, should there be one. He evidently feared a deficit. Not having taken any risk, it is only by virtue of clear and satisfactory proof that Duke, by the contract, agreed to hazard any amount of excess that might be in the tract that O'Connell would be entitled to hold such an unreasonable and gross excess as three hundred and forty-eight acres in a sale of seven hundred and fifty. (Smith v. Fly, 24 Tex., 350.)

The principle on which the rule of law is founded, that gives to the purchaser the excess in ordinary cases, is his liability to loss in case of a deficit. His hazard of a loss is the consideration he pays for the excess. If that consideration be wanting, he must rely on his express contract, if

he would claim an excess. The deed in this case shows that the contract contemplated that O'Connell should have an excess; but, if it had been for seven hundred and fifty acres, "more or less," which would have thrown on him the risk of loss from a deficit, it is very clear, on principle and authority, that he would not be entitled to a gross and unreasonable excess, not contemplated when the contract was made; much less can he claim it, when he took no risk of a deficit. (Smith v. Fly, 24 Tex., 350; 1 Sug. on Vend., ch. 7, § 3; 4 Kent's Com., 457; 1 Story's Eq. Jur., § 141.)

The deed itself, independent of any extrinsic evidence, repels any presumption that any such surplus may have been contemplated or deemed probable. The "seven hundred and fifty acres or more" conveyed was all of a tract of "eight hundred and fifty acres or more," except one hundred acres sold off previously. This, in connection with the covenant contained in it, to refund the purchase-money in proportion to the deficit, if there should be one, shows that it was considered doubtful whether there were seven hundred and fifty acres, and that at most the surplus, if any, would be insignificant.

All this testimony was before the jury, and in response to the issue submitted to them on this subject they answered, as follows:

" We find there to be three hundred and forty-eight acres, over and above the number anticipated by the parties."

We are of opinion that their finding on this, as on the other issues, is abundantly supported by the testimony. The charge of the court is substantially correct. The special issues submitted to the jury cover fully the material issues made by the pleadings. The law is correctly applied to the facts found by the jury, in the rendition of the judgment, in which we see no error, except where title is decreed to the appellee, Duke, in these words: " To the said plaintiff, Thomas M. Duke, a share amounting to $\frac{774}{1122}$ parts thereof." Which is evidently a clerical error, and

should have been $\frac{348}{1122}$ parts instead.   This error will be corrected here.

The second deed from Duke to O'Connell, made in November, 1858, has not been considered, because it is believed that the rights of the parties are fully defined and governed by the first deed, which is evidence of an executed, and not an executory, contract.   Duke, by this second deed, did not waive his equity, because, as the jury very correctly found, he was still ignorant of the mistake in the quantity of land in the tract.   If O'Connell's rights had depended on this deed, it is believed that the result must have been the same, on account of his fraudulent concealment of the material fact of the large excess in the tract.

The cases of Simonton v. Lawrence, 13 Tex., [223,] and Hatch v. Garza, 22 Tex., [76,] referred to by counsel for appellant, are not authorities on the questions in this case, because their decision was neither necessary nor proper in either of those cases.   The *dicta* of the court in those cases are, however, entirely consistent with our opinion in this. The case of Dalton v. Rust, 22 Tex., [133,] also referred to, is evidently decided on the acts of Rust and wife, who are held to be estopped from setting up any rights in the land, they having, by petition to the county court, caused the tract to be sold as the property of Lindsay's estate, and received the purchase-money, at which sale Mrs. Dalton became the purchaser.   The very general remarks in the opinion of the court in that case, on the question of the right of a party to be relieved against a mistake as to the number of acres contained in a tract of land sold by metes and bounds, must therefore be considered with much allowance, when it is manifest that the point did not receive the particular attention of the court, and the decision of the case was rested on another and different ground.   We do not regard the opinion in that case as assuming to decide the question under discussion here.   We are fortified in this

conclusion by the opinion of the court in the more recent case of Smith v. Fly, 24 Tex., 350, where the question was directly involved, which very plainly indicates the correctness of the views we have expressed.

Subject to the correction of the error adverted to, the judgment of the court below is in all things affirmed.

DECREE ENTERED ACCORDINGLY.