### EUGENE SIBLEY v. M. V. HAYES ET AL.

#### Decided June 6, 1902.

**1.—Sale of Land—Limitations—Gross Deficiency.**

Where the purchaser of an original survey of land bought with knowledge of a deficiency in the quantity called for in the patent, it was incumbent on him, if he did not intend to take the risk of whatever deficiency there might be, to have the land surveyed and ascertain the actual amount thereof, and therefore, as against his right of action to recover for a gross deficiency, the statute of limitation of two years ran from the date of the purchase.

**2.—Same—Fact Case.**

See evidence which is held to show, though the verdict of the jury was to the contrary, that the purchaser bought the land with knowledge of a shortage and agreed to take it at whatever acreage there might be, and that he was willing to risk the contingency of quantity, even to the extent of a gross deficiency. Garrett, Chief Justice, dissenting.

Appeal from the District Court of Victoria County. Tried below before Hon. James C. Wilson.

*A. B. Peticolas* and *Dupree & Pool,* for appellant.

*McCrory & Austin* and *Proctors,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action by the heirs and

legal representatives of John V. Hayes, deceased, to recover of Eugene Sibley for an alleged gross deficiency in the acreage of land sold to the said John V. Hayes in his lifetime by the said Sibley, and whose purchase money notes therefor the representatives of Hayes had paid without knowledge of the deficiency. The defendant pleaded limitations; and substantially, that if there was a deficiency in the quantity of the land the purchaser bought with knowledge and took the risk of whatever shortage there might be. There was a trial by jury, to which the court submitted both questions, and a verdict was returned in favor of the plaintiffs for a gross deficiency of 369 acres at $2 an acre, $738, for which judgment was rendered with interest.

In the year 1881 there was a remnant of vacant land between certain surveys located in Jackson County upon Arenosa Creek on the west and certain other surveys located upon Lavaca River on the east, and one W. L. Thulemeyer, with two certificates furnished him by the defendant Sibley, one for 640 acres in the name of Joseph Yeamans and one for 1280 acres in the name of R. T. Crain, appropriated this vacancy by files and surveys. The land was in an irregular and peculiar shape, and according to measurements as shown by the Land Office map then in use in Jackson County, comprised 1920 acres. Patents were issued upon these surveys May 17, 1883, for the quantity of land called for. They are prairie surveys and call for no marked objects, but only call for the lines of the adjoining surveys. Sibley conveyed to Thulemeyer an undivided one-half of the land appropriated by the two surveys. About the time these surveys were patented John V. Hayes, the ancestor of plaintiffs, moved to Jackson County and bought some of the adjoining surveys on both sides of the Crain and Yeamans surveys; and on November 3, 1884, he purchased from Thulemeyer for $1920 the latter's undivided one-half interest in the Crain and Yeamans surveys. After Hays bought from Thulemeyer he fenced his pasture, which remained as he then fenced it up to the time of the trial below. The pasture did not inclose all of the Crain and Yeamans surveys, but left out of it a small part of the Yeamans on the south and a considerable portion of the Crain on the north. These two surveys extend north and south of the body of Hayes' other lands. The controversy in this case arises out of the purchase by Hayes from Sibley of the latter's undivided one-half interest in the two surveys on June 18, 1890, for a consideration of $2000, evidenced by two promissory notes which were paid to Sibley by the widow of Hayes after his death on the date of their maturity, June 18, 1891.

The deed recited the consideration as cash and described the land by metes and bounds in plain figures as containing 1920 acres as patented. Both are prairie surveys as stated, and the lines called for in the deed are the unmarked lines of the adjoining surveys. The Hayes homestead was on the Rodriguez league about one mile from the Yeamans survey. Sibley resided in Victoria. He had an agent (A. Schmidt) for the sale of the land who resided in San Antonio. The negotiations

for the sale and purchase of the land were nearly all by letter. Hayes offered Schmidt $3 an acre for Sibley's undivided interest in the 1920 acres owned by them and adjoining Hayes' other lands in his pasture. Schmidt wrote to Sibley on June 6, 1890, that he had written to Hayes that he could have whatever land adjoined him at $3 an acre and for him to have it surveyed and send the field notes. On the same date Hayes wrote to Sibley: "I received a letter from A. Schmidt concerning that land of yours that is in my pasture. I would like to buy, but as I have now no money on hand, I would like to take it without a payment on it right away. I would like to know on what terms you would let me have it, and what interest would be on the money. P. S. That is the land which is in my pasture."

Sibley replied June 9, 1890: "Yours of the 6th inst. received. Yes, I told Mr. Schmidt I would sell you the land in your pasture at your offer of $3 per acre. You can pay part cash if you wish to. If not, you need not pay any cash, but give your note or notes as may suit you at 10 per cent interest. If the notes are made on two years time or less than two years, I don't want any lien on the land, but just want your plain note. If you want to make the notes for more than two years, I would like to have a lien on the land. I am going off in a few weeks to be gone four or five months, and if we trade on this basis it must be at once. What surveyor do you want to find out how much land is in your pasture? Let me know and let's try and agree on the same man."

To this letter of Sibley Hayes replied June 12, 1890, objecting to 10 per cent interest and offering 8 per cent. He stated that the prairie was so wet that the land could not be surveyed for two weeks. In reply to this letter Sibley wrote, June 14, 1890: "Your letter received yesterday. It is likely I will leave here before two weeks. Mr. Allen says he can make the survey next week. How will that suit you? Let me know at once and I will tell Mr. Allen, so he can make his arrangements to be there. He had better leave the train at Inez, had he not? Can you meet him there? P. S. John, make me an offer for my entire interest there payable in your 8 per cent notes. If you don't want to make the offer per acre for 960 acres (since you say it is not all there), make me an offer in round figures for my entire interest there, whatever it may be. I am disposed to save the expense and trouble of a survey, and no doubt you are too."

Which Hayes, June 17, 1890, answered as follows: "Your letter of 14th to hand. I know that there is not as much land in our claims as we claim the tracts contain. I will make you this offer, viz: Will give you $2 per acre for your 960 acres, and give my note payable in twelve months, interest at 8 per cent, as you propose, and will take it as it is without any further survey. If you can not take this, let Mr. Allen come over to El Toro next Monday, and I will meet him there. Write to me and let me know what you will do in this matter. If you accept you can prepare the title, and send note over and I will sign."

Sibley wrote Hayes, June 18, 1890: "Your favor of the 17th inst.

received and noted. I inclose herein deed to you and the patents. I have named $2000 in the deed as a consideration. I merely mention it as a round figure, without reference to what I am to receive, and I inclose two notes, one for $1500 and another for $700, aggregating $2200, which I think, everything considered, you should be willing to pay. If acceptable, sign and return the notes. If not, return the deed and patents. My plan is to leave here next Tuesday. In case you decline this trade I will write you Saturday whether to meet Mr. Allen at El Toro Monday. If I leave Tuesday I will not be here to make the deed when Mr. Allen finishes the survey, so in that case there will be no need of sending him. But if I don't get off when expected, we can have Mr. Allen go over, provided he says he can get through in time to complete the trade before I get off."

Hayes answered this letter, June 20, 1890: "Your favor of 18th inst. received, together with deed to me and two patents to land. I can not accept your proposition to pay $2200, as I am sure the land is not there and believe it will be cheaper for me to buy after a survey. Though under all the circumstances I will give $2000 and settle it up. If you accept this you can prepare another note, or two, if you prefer, and send over and I will sign and return them. The papers are left with Mr. Allen, Edna. Try and let me hear from you by tomorrow's mail."

On margin of this letter in Sibley's handwriting appears the following memorandum: "Answer, June 21, 1890, and accepted and sent notes."

The trade was closed by the execution of two notes, one for $1300 and the other for $700, payable June 18, 1891. Hayes died in January, 1891. His wife and five sons survived him; the ages of the sons ranged from 18 to 10 years. His widow administered upon his estate, and when the notes fell due paid them. It appears from the evidence that neither Sibley nor any of the plaintiffs knew of any deficiency in the acreage of the surveys. Sibley had never had the same surveyed, and it was not shown that he was ever on the land. He made no representation or statements about the land except as found in his letters. The plaintiffs discovered that there was a shortage on having the lands of the estate of John V. Hayes surveyed for partition. The discovery was first made in October or November, 1898, and the survey of the lands was completed in July, 1899, and this suit was filed October 22, 1900. The finding of the jury of the amount of shortage in the surveys is fully supported by the evidence. It appears that when actually run out the Crain contained only 613 acres, and that the Yeamans contained according to one surveyor 377 and according to another 351 acres.

The question of limitation is presented by the appellant under appropriate assignments of error upon the action of the court in overruling appellant's exceptions to the petition, in charging the jury, and finally in overruling the motion for a new trial. It is the opinion of a ma-

jority of the court that the evidence shows that Hayes bought the land
with knowledge of a shortage and proposed to take it at whatever acre-
age there might be as shown by the letters between him and the appel-
lant negotiating the trade, and that proper diligence required him to
ascertain the actual shortage by a survey of the land, if he did not
propose to be bound by his agreement as it appeared by its terms to be.
That his offer as it appears from his letters to Sibley showed a willing-
ness to risk the contingency of quantity, even to the extent of a gross
deficiency. That the character of the country and of the surrounding
surveys, and the fact that the land in question was located upon a sup-
posed vacancy between adjacent old and large surveys with unmarked
lines running through a prairie country, all should have impressed
upon him the necessity of a careful survey to determine the amount of
acreage in the tracts. That Hayes did not rely on the field notes in the
patents, but claimed that the quantity of land called for in them was
not there, and that as the unquestioned facts in the case showed that he
bought with certain knowledge of a considerable deficiency in the quan-
tity of land called for in the patents, diligence required of him, if he
did not intend to take the risk of whatever deficiency there might be,
to have the land surveyed and discover the actual amount of acreage,
and, such being the case, that the statute of two years limitation was
at once put in operation against him. That no facts are alleged in the
petition or shown by the evidence that would prevent the statute of
limitation from running, and it was error to submit the question of
limitation to the jury for their determination. Bass v. James, 83
Texas, 110. Being of the opinion that the plaintiff's cause of action
appeared to be barred by limitation, it is the further opinion of the
majority of the court that the judgment of the court below should be
reversed and that judgment should be here rendered in favor of the
appellant.

This disposition of the question of limitation renders it unnecessary
to pass upon the remaining assignments of error. It is the opinion of
the writer, however, that there are no facts to indicate that the parties
contemplated a gross deficiency, or that Hayes intended to take the
risk of such deficiency. The evidence showed that there was a defi-
ciency to the extent of about one-half of the land, while the negotia-
tions about the price showed that only an ordinary deficiency was in
contemplation of the parties. The patents called for the full comple-
ment of 1920 acres, and the character of the country and the possession
of the land were such that nothing like an accurate estimate of quan-
tity could be made without a survey, and there was no fact to show
that Hayes could have suspected that there was more than an ordinary
shortage. Mere knowledge of some shortage did not require any dili-
gence of him to ascertain what it amounted to. He owned all the land
contiguous to the main body of the two surveys. It lay in his pasture,
and he had no occasion to have it surveyed. He died within a few

months, and the plaintiffs, his wife and minor children, had not even the knowledge that would come of experience in such matters to incite them to diligence. I think the question both as to limitation and of intention to take the risk of a gross deficiency were properly submitted to the jury, and that there are no errors in the record that call for a reversal of the judgment. O'Connell v. Duke, 29 Texas, 299. The question of what would be the amount of an ordinary deficiency presents some difficulty, but the verdict of the jury evidently allows for a deficiency, and it is believed that there is not only evidence to support the allowance made by them, but that it is sufficiently liberal.

*Reversed and rendered.*