Adopted February 10, 1891.

---

J. J. CULBERTSON ET AL. V. C. C. F. BLANCHARD.

No. 6644.

1. **Purchase of School Lands.**—The court correctly sustained exceptions to a plea attacking the contract of purchase of school lands upon the ground that the purchaser already had bought seven sections before those in controversy. The State alone could raise the question. Besides, the time for instituting proceedings by the State to set aside the sale and purchase had expired.

2. **Fraud and Mistake—Pleading.**—Suit upon promissory notes given for three tracts of land. In defense the vendees of the land alleged that plaintiff had falsely and fraudulently misrepresented the position of one of the tracts with reference to the others; that not knowing the facts they relied upon the statements of the vendor, plaintiff; that one survey is not adjoining the others, as had been represented, and by reason of its actual position its value was not more than one-half what it would have been if it was where represented, and that the value of the other tracts was less by reason of the disconnected situation. *Held:*

1. That under the allegations, there being proved mutual mistake and no fraud, the defendants were entitled to relief under the pleadings. The allegations included the facts of mistake.

2. Mutual mistake as to a matter material in a contract is ground for rescission, regardless of the motives of the party innocently making representations relied upon and afterwards ascertained to be untrue.

3. If the vendees would not have bought the two surveys knowing the detached position of the other tract, then its position was material and the mistake material.

4. In a purchase together of three surveys of land as adjoining, it being ascertained that one of the tracts was disconnected, thus the value of the purchase being materially changed, the vendor can not insist upon a partial rescission.

5. The right of rescission of the entire contract existed upon discovery of the mistake.

6. A ratification or adjustment after the discovery having been pleaded by plaintiff, and the court not finding upon the issue and the testimony being conflicting, this court can not affirm upon such ground.

3. **Interest on Notes for School Lands — Forfeiture.**—Interest for year 1885 on notes given the State for school lands was not paid during the year 1885, nor was the interest for 1886 paid. In February, 1886, the vendees of the original purchaser,

having discovered the mistake in locality of the tracts, made demand and offer to rescind the contract. Two of the tracts were school land sections and the default of payment of interest as here given. *Held*, that at the time there was no forfeiture of the land to the State for the nonpayment of interest, and that the vendees were able to restore the land *in statu quo*.

4. **Same.**—By Act of February 19, 1885 (General Laws, p. 18) it is provided "that the failure of a holder of public free school lands to make the annual payments of principal and *interest thereon* prior to the first day of August after the same becomes due shall *not* cause a forfeiture of the rights of such holders in such land."

5. **Tender of Deed of Rescission of Sale of Land.**—It is not material that no deed of reconveyance was tendered by the vendees having the right to rescind and offering to do so, when it appears that such reconveyance would not have been accepted had it been tendered.

6. **Offer to Rescind in Reasonable Time.** — It appeared that a sale of land was made July 29, 1884. The lines were not known to the purchasers until the fall of 1885. The vendor had promised to have the lines run. This was not done until January, 1886. *Held*, that an offer to rescind made in February, 1886, was made within a reasonable time after the discovery of the lines of the surveys developing fully the mistake, the ground for rescission.

APPEAL from Concho. Tried below before Hon. A. W. Moursund. The opinion gives a statement.

*J. G. Cook,* for appellants.—1. The State not having parted with her title to school sections 2 and 4 by patent or otherwise, it was competent for the appellants to attack appellee's right to purchase the same collaterally, by showing fraud or any other unlawful act in the purchase from the State or that appellee under the law had no right to purchase, and upon proof of such illegal original purchase to recover back the money already paid to appellee and procure a cancellation of the trade between them. Gen. Laws 1883, pp. 86 (sec. 6), 107; State v. Snyder, 66 Texas, 702; State v. Rhomberg, 69 Texas, 212; Decourt v. Sproul, 66 Texas, 368; Rodgers v. Daily, 46 Texas, 583.

2. The court having found in its conclusion of fact that appellee at the time of his sale to appellants represented section 4 to be in an entirely different position with reference to the other two sections than its true position afterwards proved to be, and having found that section 4 was of less value as actually situated than as represented, and having found that appellee offered to cancel the trade only as to section 4, and appellants demanded a cancellation of the entire trade when the mistake was discovered, should have further found from the evidence that the situation of section 4 as represented was a fact material and essential to appellants in their purchase and affected the entire trade, and that such representations affected the value of the entire land as well as the uses and purposes intended by appellants in making the purchase. And upon all of such facts, as well as conclusions, the court should have given judgment for appellants and decreed a cancellation of the contract, whether the mistake was made by appellee innocently or otherwise. Moore v. Hazelwood, 67 Texas,

625; Daugherty v. Knolle, 44 Texas, 455–456; O'Connell v. Duke, 29 Texas, 310; Ladd v. Pleasants, 39 Texas, 415; Weir v. McGee, 25 Texas Supp., 30; Smith v. Fly, 24 Texas, 345; Story's Eq. Jur., secs. 141, 144; 4 Kent, 457; 4 Wait's Act. and Def., 513; Hill v. Buckley, 17 Ves., 394; Haddock v. Williams, 10 Vt., 570; Daniels v. Mitchell,. 1 Story, p. 173; Glascock v. Thomas, 3 Leigh, 113; Hamman v. Allen, 2 Sum., 387.

3.   The facts and circumstances in evidence in this case do not support the finding of the court to the effect that the misrepresentations of appellee as to the situation of section 4 were innocently made.   The decided preponderance of the evidence necessarily leads to the conclusion that appellee knew the true situation of section 4 and of the other two sections at the time of his sale to appellants, and that section 4 was not situated as he represented it to be.   5 Wait's Act. and Def., pp. 437, 438; Moens v. Heyworth, 10 M. & W., 147; Swan v. N. B. A. Co., 2 H. & C., 183; Ayres' Case, 25 Beav., 522; 3 Keyes, 387; 3 Abb. (N. S.), 235; 1 Abb. Ct. App.; 454.

4.   Appellants having paid the interest due the State on sections 2 and 4, and having until August 1, 1886, to pay such interest due for 1885, they were in February, 1886, at the time the mistake as to section 4 was first discovered and cancellation of the trade demanded, in a condition in which they could have placed appellee in *statu quo* as to all of the land purchased; and such demand by appellants in February, 1886, entitled them to a rescission of the entire contract, notwithstanding their inability to restore the school section at the time of the trial.   Gen. Laws 1885, pp. 13, 18; Dawson v. Sparks, 1 Posey's U. C., 748; Masson v. Bovot, 1 Denio, 69; Scott v. Perrin, 4 Bibb, 360; Tibbs v. Timberlake, 4 Litt., 12; Veazu v. Williams, 8 How., 158; Gatting v. Newell, 9 Ind., 572; Kerr on Frauds, 334, 336, 337; Downer v. Smith, 32 Vt., 7; Buford v. Brown, 6 B. Mon., 554; Irving v. Thomas, 6 Shep., 418.

5.   At the date of the trial of this cause there was no law in force authorizing the State to declare a forfeiture of school lands purchased from the State on account of failure to pay interest, the right of the State to declare forfeiture in such cases having been abrogated by act of February 22, 1885; and appellants at the date of the trial having the right to pay all accrued interest on the school sections 2 and 4 were in a condition to place appellee in *statu quo* as to all of said lands upon a rescission of this contract.   Gen. Laws 1885, chap. 17, p. 18.

*A. H. Graham, A. M. Jackson, Jr.* and *John I. Guion,* for appellees.
1.   The issue of fraud in the purchase of school lands from the State under section 6 of the act of 1883 could be raised only by the State, and by the State only within twelve months after the sale.   More than three years having elapsed after the sale in this instance, and the State not having raised such an issue, it was not competent for defendants to raise it.

Act April 12, 1883, sec. 6. Authorities of appellant, so far as they bear on the question, show that the title could at most be only voidable at the suit of the State.

2. Appellants having in 1885, at the time of the discovery of the mistake by appellee as to the location of section 4, declined to accept a cancellation of sale as to that section, and having continued to enjoy and occupy the premises, and having obtained extensions on their notes after this discovery, were by their acts precluded from subsequently obtaining a rescission on this ground. 5 Wait's.Acts. and Def., p. 522; De Armand v. Phillips, Walk. Ch., 186.

3. A purchaser of real estate will not be entitled to a rescission of his purchase on the ground of misrepresentations made by the vendor as to the locality of the land unless he shows:

(1) That he relied solely on the truth of these representations at the time of his purchase.

(2) That he is in a condition to place the vendor in *statu quo.*

(3) He must tender a reconveyance of all title acquired from the vendor and a surrender of possession.

(4) He must not have been guilty of laches in the discovery of the falsity of the representations, and must promptly, upon such discovery, seek a rescission and tender a reconveyance. Bank v. Gregg, 14 N. H., 331; Manahan v. Noyes, 52 N. H., 232; Lane v. Latimer, 41 Ga., 171; Hanson v. Field, 41 Miss., 712; Edwards v. Roberts, 7 S. & M., 544; Smith v. Richards, 13 Pet., 26; 5 Waits' Act. and Def., 511, 516, 518.

MARR, JUDGE.—The appellee, Blanchard, as plaintiff below, instituted this suit in the District Court of Concho County against the appellants, Culbertson and Cummings, upon two promissory notes executed and delivered by the latter to the former for $350 each, on the 29th day of July, 1884, payable respectively *one* and *two* years after date, with interest at 10 per cent per annum and attorney fees, and which notes, as well as the warranty deed from appellee to appellants to survey No. 1, retained a vendor's lien on said survey and also upon surveys Nos. 2 and 4, and upon all of which plaintiff prayed a foreclosure; but at final trial, having abandoned the lien on Nos. 2 and 4, the foreclosure was duly awarded upon No. 1.

These three surveys are those in dispute. No. 1, Gulf, Colorado & Santa Fe Railway Company, and its alternate, No. 2, each contained 612½ acres, and No. 4, the alternate of No. 3 in the name of Haynes, contained 640 acres. Nos. 2 and 4 are State school lands, purchased by appellee on thirty years time, etc.

The conveyances from appellee to appellants, as the notes, were executed and the contract of sale consummated on the 29th day of July, 1884.

All three sections were sold and purchased on the same day. Section

1 was sold by warranty deed at the price of $2 per acre, $1225 for the 612½ acres. Appellants paid $525 cash on the purchase of this section and executed the notes sued on for the balance of the purchase money of this section. Appellants purchased the two school sections by assuming to pay the amount to become due to the State and paying appellee in cash $275 for a quit claim release of his right, title, and interest in said sections.

Appellees resisted the payment of the notes and asked for rescission of the entire contract, because, as they alleged in effect, that plaintiff falsely and fraudulently misrepresented the true position of survey No. 4 and the title to all three of the sections; that they were strangers and unacquainted with the lands, and that the plaintiff was a land agent and surveyor and well knew the true position of the lands, etc., and that they were misled and deceived by such representations, and that instead of section 4 lying south of section No. 3 and abutting on No. 1 2821 varas, it in fact lies west of said section No. 3 and only abuts on No. 1 1420 varas, thus destroying the solidity of the lands purchased by them of the plaintiff; that appellee represented the lands as constituting a solid body of 1865 acres and "nearly in the form of a square;" that the changed position of No. 4 diminishes its value more than one-half and affects the value of all, and that had they known the true position at the time of the trade they would not have purchased the lands; that they desired the land, and so informed plaintiff, for a stock ranch and farm.

There was no demurrer on these points sustained to the sufficiency of the answer, and we think the above may be fairly deduced from what is stated.

Defendants also alleged a conflict between the lands sold them and older valid surveys, by which they claimed they would lose about 1000 acres of their lands. They are and have been ever since the purchase in the undisturbed possession of the lands and have made valuable improvements on section No. 2, etc.

Plaintiff denied that a conflict existed and the court below so found. He also admitted a mistake upon his part as to the situation of section No. 4, and that its true position is as claimed by the defendants. He claimed, however, that the defendants, after discovering and being fully informed as to the true locality of the lands, agreed to accept and retain them in their present shape in consideration of an extension of time on the first note, then past due.

The court below found that plaintiff was mistaken as to the position of section No. 4, and that his representations were innocently made. There is evidence in the record sufficient to support this finding, if it were of any importance to go into this branch of the case. There is also ample evidence to support the conclusion of the court below that no conflict in fact existed to disturb the title of the defendants.

The court below, however, wholly omitted, as we think, to find upon

the most material points at issue.   There was no finding as to the waiver of the right to rescind by defendants which plaintiff pleaded, as above stated; nor did the District Court determine the very material question (raised by both pleading and proof) whether the defendants in purchasing the lands were influenced by the position and shape of survey No. 4 as they supposed it to be when the sale was made.   The court below, as we conclude from the record, evidently proceeded upon the erroneous view of the law that as the defendants in their pleading alleged *fraud*, and not *mutual mistake* in so many words, no defense can be made on the latter ground, and that by their failure to pay the interest on the school sections Nos. 2 and 4 they could not place the plaintiff in *statu quo* in case the contract was entirely rescinded.

We think the court below was correct in sustaining the exceptions of the plaintiff to so much of the answer of the defendants as sought to impeach the title of the plaintiff to. school sections Nos. 2 and 4, on the ground of fraud against the State in procuring the same, for that he had already purchased "seven" school sections prior to the acquisition of these. The State alone could complain of this, and the time for it to do so had expired anterior to the sale to defendants.   Martin v. Brown, 62 Texas, 485: Decourt v. Sproul, 66 Texas, 368; Act 1883, sec. 6, Gen. Laws, p. 86.   This disposes of the first assignment of error.

The other assignments may be treated together in view of what we have already held as to the question of conflict of surveys.

The district judge held, *inter alia,* in his conclusions of law that "there being a *mutual mistake* as to the location of survey No. 4, no cancellation of the trade could be had by defendants on this ground, unless they in their *pleadings* sought cancellation on *this ground* and show their ability and willingness to place plaintiff in as good condition in reference to said land as he was at the time he conveyed to defendants;" that "by failure to pay interest to the State for said land defendants placed it out of their power to place plaintiff in *statu quo.*"   It is plain, we think, that upon these propositions the court below decided against the appellants. We have carefully searched the entire record and fail to discover any distinct finding by the court below that would pretermit this question and justify us in affirming the judgment on the evidence and the conclusions of the court considered as a whole.   It becomes necessary, therefore, to determine the correctness of the above propositions of the learned district judge as applied to the facts of this case.

We think that there was no fatal variance between the allegations and the proof.   The defendants, under their pleading, were entitled to rely upon either the fraudulent representations of plaintiff (if any) or a mutual mistake of both parties.   So far as they were concerned, it made no difference whether they were deceived through the fraudulent or innocent representations of the plaintiff as to any fact shown to be a material in-

ducement influencing their action in making the contract. However innocent may have been the intention of plaintiff in making the representations, and though he may have been mistaken as to the locality of the land, yet if such representations had in fact the effect of misleading or deceiving the defendants or influencing their conduct in a material matter, the result was in the eyes of the law the perpetration of a *fraud* upon defendants, regardless of the motives of the plaintiff. This is not a case where the vendee assumes the hazard of loss in consideration of the vendor risking the *gain* in quantity. O'Connell v. Duke, 29 Texas, 310; Farenholt v. Perry, 29 Texas, 316; Smith v. Fly, 24 Texas, 349; Ramey v. Allison, 64 Texas, 697; Haldeman v. Chambers, 19 Texas, 50; Watson v. Baker, 71 Texas, 739.

That a contract may be entirely rescinded upon the ground of a mutual mistake as well as for fraud is well settled. In such cases, where the parties suppose they are bargaining with reference to specific property which they have in mind, when in fact it either does not exist or is materially different from what they believed it to be, it is very evident that their minds have not met and concurred so as to constitute a contract as to the real subject matter as it is afterwards ascertained to be, and that the conveyance to the property as it really exists, though it may be identified as therein described, does not evidence the true intention of the parties in making the contract. Pendarvis v. Gray, 41 Texas, 326.

The plaintiff, upon both parties learning of the changed position of No. 4, offered to rescind as to that section, which defendants declined unless he would entirely rescind. They shortly afterwards offered and demanded rescission.

We are of opinion that the important question on this point was, Did the position of survey No. 4, as represented by plaintiff and understood by defendants, as well as the supposed shape of all three of the sections in a body as a consequence of the supposed locality of No. 4 as represented, constitute a material inducement to defendants and influence them, under all the circumstances surrounding the transaction at the time of the trade and having reference thereto, in purchasing sections Nos. 1 and 2 as well as section 4? There is much evidence in the record to support the affirmative of this question. In other words, would they have bought Nos. 1 and 2 had they known at the time the true position of No. 4? If it did so influence them in making the bargain as indicated in the first question above, then, aside from the question of waiver or estoppel, etc., we think that they would be entitled to a rescission of the contract of sale entirely as to all three of the sections.

As presented to us, we regard the purchase and sale of all three of the sections as one transaction, constituting one entire contract with reference to the whole land. Appellants, it may be stated in addition to what has been said, examined the lands with a view of purchasing them as one

body, and evidently they were bought, sold, and intended to be used together and in connection with each other. The proof shows that section 4 is not worth in its present position more than half as much as it would have been if it had in fact been located as represented, and tends to show that the value of the other two sections is thereby materially diminished, considering the purpose for which they were purchased.

In further support of our views as to the material questions involved, we refer to the following authorities: Pendarvis v. Gray, 41 Texas, 326 (not very unlike the present case); Moore v. Hazelwood, 67 Texas, 624; Putman v. Bromwell, 73 Texas, 467.

There being no finding of the court below and no direct evidence that time was in fact given on the first note in consideration of defendants agreeing to retain the lands in their present shape after they had fully learned of the true position, and there being a conflict of evidence as to any such agreement ever having been made, it follows that the determination of that point would not be decisive of this appeal. We may remark, however, in view of another trial, that if established satisfactorily as alleged by plaintiff, we are disposed to hold that such an agreement would have the effect of defeating the right of rescission in so far as that is based upon the position of the lands.

It remains to decide whether in February, 1886, when defendants demanded unconditionally of the plaintiff an entire rescission of the trade, they could have placed plaintiff in *statu quo,* inasmuch as they had only paid the interest to the State on school sections Nos. 2 and 4 for the year 1884, but not for 1885 and 1886.

The State had made no attempt to secure a forfeiture of the inchoate title to the lands on account of such failure to pay the interest, even if subject to forfeiture on that account.

But we do not believe that the failure to pay interest had the effect of forfeiting the right or title to the land, as held by the court below. The interest for the year 1885 alone was then due, and that for 1886 would not become due absolutely until the first day of August of that year. Act of February 16, 1885, sec. 9, Gen. Laws, p. 13. But it was further enacted by the same Legislature on this subject, by the act of February 19, 1885, "that the failure of a holder of public free school land to make the annual payments of principal or *interest thereon* prior to the first day of August after the same becomes due shall *not* cause a *forfeiture* of the rights of such holder in such land." Gen. Laws, p. 18. We hold, therefore, that had the contract been rescinded in the fall of 1885, when it was first broached, or in February, 1886, when unconditionally demanded by defendants, they could have placed plaintiff in as good condition with reference to these lands as he was when he conveyed. True defendants tendered no formal deed reconveying the lands, but they were evidently perfectly able and willing to do so had plaintiff shown any disposition to

accept the same. It is entirely clear that had they tendered him convey-ances to the whole land of the best approved form, accompanied by livery of seizin, broken earth and "olive branch," he would have refused to accept them and consent to an entire rescission of the bargain and sale. We think therefore that this point made by appellee is not well taken.

In view of the facts that the lines and location of the surveys were un-known to defendants at the time of the trade and certainly until the fall of 1885, and that plaintiff had agreed to have the lands surveyed for de-fendants in order to ascertain these facts whenever they could get the county surveyor to make the survey, and that this was not done, if at all, until January, 1886, we do not think the defendants unreasonably delayed their demand for rescission; at least we can not hold such to be the state of the case. Haldeman v. Chambers, 19 Texas, 50.

On another trial, if it appears that a conflict really exists that will de-prive defendants of any of the land bought of the plaintiff, then they could only claim pay from plaintiff for such improvements, made in good faith, as are on such portion of the lands as is not affected by a conflict with older valid surveys. The plaintiff could not be required to compen-sate them for improvements they have erected on land which does not belong to him. If there is a conflict with older surveys, the owners thereof, it seems, may be made parties to the suit and the matters adjusted. Estell v. Cole, 52 Texas, 170, and authorities cited; and as bearing on some of the issues in the case, see Cooper v. Singleton, 19 Texas, 268; Brown v. Hearon, 66 Texas, 63; McIntyre v. De Long, 71 Texas, 86.

We do not see how "the Willow water hole" could be considered as a part of the inducement for the purchase of any of the lands without proof of some right in defendants to use the same.

We conclude that the judgment rendered by the District Court ought to be reversed and the cause remanded.

*Reversed and remanded.*