**MASON v. PETERSON et al.    (No. 333–3696.)**

(Commission of Appeals of Texas, Section B. April 18, 1923.)

**1. Vendor and purchaser &#8694;45—Whether representation as to irrigable land was representation of fact or opinion question for jury.** ·

In an action on vendor's lien notes, defended on the ground of misrepresentation as to the number of. acres susceptible of irrigation by gravity flow from adjacent irrigation canal, evidence *held* sufficient to make a question for the jury whether the representation of the vendor's agent that not more than five acres of the tract were not susceptible of irrigation by gravity flow was a representation of fact or an expression of opinion.

**2. Vendor and purchaser &#8694;37(1) — That statement was made in answer to inquiry does not necessarily characterize it as a mere statement of opinion.** ·

Whether vendor's representation was made as a voluntary statement by the seller or in answer to a question by the buyer in the course of the negotiations makes no material difference in determining whether the representation was one of fact or opinion. ‾

**3. Vendor and purchaser &#8694;37(4)—Purchaser entitled to rely upon representations of vendor as to acreage susceptible of irrigation.**

The seller is ordinarily presumed to know· the quantity, character, and quality of land

which he owns and offers for sale, and where the purchaser has seen the land but once, at which time it was "in the brush," and its value was dependent upon the amount of acreage susceptible of irrigation by gravity flow from an adjacent canal, the purchaser being a stranger to the country and unfamiliar with irrigated lands, the vendor cannot successfully contend that the parties stood upon an equal footing as to seller's representation as to the amount of acreage so irrigable, since the purchaser was not bound to have a topographical survey made.

**4. Vendor and purchaser ⊜⇒37(4)—Misrepresentations as to quantity or character of land constitutes fraud entitling purchaser to equitable relief.**

False representations by the vendor regarding the quantity of land sold, or the quantity of a particular character, made as an inducement to purchase, which actually deceives the purchaser and is relied upon by him, constitutes fraud which entitles the purchaser to relief in equity.

**5. Vendor and purchaser ⊜⇒37(5)—Intentional deceit not prerequisite to granting purchaser relief.**

To entitle the purchaser to equitable relief for misrepresentations, it is not necessary that the vendor shall have acted dishonestly in making the misrepresentations, but, if the representations be as to facts, and not mere expressions of opinion, and are calculated to and do operate as an inducement to the purchaser to enter into the contract, the consequences are the same, whether innocently or fraudulently made.

**6. Vendor and purchaser ⊜⇒31—Misrepresentation as result of mistake entitles purchaser to same remedies as for fraud.**

Even where there is no element in a transaction between vendor and purchaser sufficient to warrant a finding of actual or constructive fraud, and a misrepresentation as to a material fact is the result of an honest mistake on the part of the vendor, the mistake being shared in by the purchaser, equity will grant relief to the purchaser upon the doctrine of mutual mistake and apply the same remedies as in the case of actual or constructive fraud.

**7. Vendor and purchaser ⊜⇒342—Purchaser's remedy for fraud or mistake alternative.**

Where by fraud of the vendor or by mutual mistake a purchaser enters into a contract, he has an election of inconsistent remedies; he may rescind the contract, and recover back the consideration which he has paid, or, if he has not paid the consideration, he may cancel his obligations under the contract, placing the vendor in statu quo, or he may elect not to rescind, and, retaining the property, he is entitled to relief to the extent of his injury by reason of the fraud or mistake.

**8. Vendor and purchaser ⊜⇒351(1)—Purchaser may recover the damages suffered from vendor's mistake or fraud.**

Where the purchaser has paid the consideration or has executed a negotiable instrument therefor, and such instrument has passed into the hands of an innocent purchaser, the purchaser may sue for and recover against the seller the actual damages he has sustained by reason of the vendor's fraud or mistake.

**9. Limitation of actions ⊜⇒96(2), 100(6)—Limitations begin to run against action for fraud or mistake from time of discovery.**

An action by the purchaser against the vendor for the latter's fraud or mistake, whether it be for rescission and recovery of consideration paid, or for cancellation of obligations under the contract, or for damages, is subject to the laws of limitation, and limitations begin to run from the time the purchaser discovers the mistake or fraud, or from the time he should have discovered it with due diligence.

**10. Limitation of actions ⊜⇒40(2)—Defense of vendor's fraud not affected by limitation statute.**

Fraud or mistake enters into and vitiates a contract for the sale and purchase of real estate to the extent of the resultant injury, and is a defense available to the purchaser in a suit on his obligation, and, where he seeks relief only by way of defense to defeat in whole, or in part the obligation for the purchase, his defense is not affected by the statute of limitations.

**11. Evidence ⊜⇒264—Defendant's admission to obtain opening and closing covers only plaintiff's allegation necessary to make prima facie case.**

Where defendant, to obtain the opening and closing under rule 31 (142 S. W. xx) in open court, admitted plaintiff's cause of action as pleaded, such admission extended only to essential elements which plaintiff was required to prove under his petition in order to make a prima facie case, and matters set up in the answer which defendant must plead and prove and which were alleged by way of confession and avoidance were not admitted.

**12. Vendor and purchaser ⊜⇒42—Payment of interest on purchase notes does not preclude defense of fraud in action thereon.**

In an action on vendor's lien notes defended on the ground of misrepresentation as to the number of acres susceptible to irrigation, the mere fact that the purchaser paid the interest on the notes without protest, and made no complaint of misrepresentation until after suit filed, could not ipso facto constitute a bar to defeat a just claim for relief against fraud or mistake, but may be considered in determining whether the purchaser was actually misled.

**13. Appeal and error ⊜⇒1094(5), 1163—Finding by Court of Civil Appeals that verdict is not supported by evidence as matter of law, though reversed by Supreme Court, is final finding of fact, and necessitates remand for new trial.**

Though the Court of Civil Appeals has the power to review the facts and to set aside a judgment where in its opinion the evidence preponderates against it, although the evidence may be sufficient as a matter of law to submit the case to a jury, yet where the Court of Civil Appeals has held that the evidence is insufficient as a matter of law to support the ver-

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dict, this holding, though reversed by the Supreme Court, is equivalent to a finding that the evidence is insufficient as a matter of fact, and such finding by the Court of Civil Appeals is binding on the Supreme Court, so that it must remand for a new trial.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Mrs. E. V. Peterson and others against Calvin F. Mason to recover on vendors' lien notes. The court of civil appeals affirmed a judgment for plaintiffs (232 S. W. 567), and defendant brings error. Reversed and remanded.

Seabury, George & Taylor, of Brownsville, for plaintiff in error.

Graham, Jones, Williams & Ransome, of Brownsville, for defendants in error.

McCLENDON, P. J. On September 20, 1913, E. V. Peterson and wife conveyed to Calvin F. Mason a tract of land in Hidalgo county for a total consideration of $4,800, $3,000 of which was represented by certain property in Missouri valued at that amount, and the balance by two vendors' lien notes for $900 each due two and three years respectively after date. Mason paid the interest on these notes up to September 17, 1917, but paid no part of the principal. E. V. Peterson having in the mean time died intestate, this suit was brought on September 13, 1920, by his heirs at law, against Calvin F. Mason to recover the amount unpaid on these notes and to foreclose the vendor's lien securing them.

In addition to a general denial, Mason pleaded failure of consideration for the notes in that at the time he purchased the land S. A. McHenry, the duly authorized agent of Peterson, fraudulently represented to him that there were only four or five acres of the land that were not susceptible of irrigation by gravity flow from an adjacent irrigation canal, whereas there were in fact about nineteen acres which could not be thus irrigated; that defendant believed and relied upon this representation and would not otherwise have bought the land; that, had the land been as represented, it would have been worth the contract price; but that its actual and market value was not exceeding the $3,000 actually paid by him. This misrepresentation of fact was pleaded by Mason as a defense to the suit on the notes only by way of failure or partial failure of consideration; and he prayed that, if it should be determined that the land was in fact worth more than $3,000 and less than $4,800, the amount of plaintiffs' recovery be diminished to the extent that the value of the land fell short of $4,800. There was a further claim by Mason that McHenry had misrepresented the acreage under fence, but as this item was eliminated by the verdict, it need not be further noticed.

Plaintiffs, in a supplemental petition, denied the misrepresentation and the authority of McHenry to bind Peterson thereby; alleged that defendant was estopped to set up failure of consideration because he had examined the land before he bought it, and on various dates since the notes were executed had acknowledged their justness, promised to pay same, and made interest payments thereon, some of which acknowledgments and promises had been made since the maturity of the notes. Plaintiffs also plead the two and four year statutes of limitation in bar of the defense of failure of consideration. A separate count in this pleading reads:

"They allege defendant became thoroughly familiar with said lands and the condition and value of the same before signing said notes, and within less than a year thereafter, and up to the time of filing his answer herein, he had never intimated or suggested to E. V. Peterson or plaintiffs that there was any kind of failure of consideration for said notes, but, on the contrary, has on many occasions expressed his willingness to pay the same, after the maturity dates thereof, in consideration for the payment of interest thereon and acceptance thereof by plaintiffs, and in consideration for withholding suit thereon, which statements plaintiffs believed, relied thereon, and have been injured thereby."

Before any evidence was introduced, the defendant, for the purpose of obtaining the opening and closing in the introduction of the testimony and argument before the jury under district court rule 31 (142 S. W. xx) admitted the cause of action as pled by plaintiffs, as set out in their original petition, and stated to the court that he relied only upon the defensive matters set up in his answer. Upon this admission defendant was accorded the right to open and close as provided in rule 31. The case was submitted to a jury upon special issues, the pertinent jury finding being substantially as follows: That McHenry represented to defendant while upon the land and before defendant bought it that there were only four or five, or not more than four or five acres, that were too high to water; that this representation was made as a fact, and not as the mere expression of an opinion; that the market value of the land in bulk at the time of the sale was $3,635; that in the spring of 1913 defendant was in possession of such facts as would have put a reasonably prudent man upon such inquiry as would have led to the discovery of the quantity of land too high to water; and that the reasonable market value of the land at the time of the sale, if it had been as represented to defendant, would have been $4,800.

Upon these findings the trial court rendered judgment for plaintiffs for $2,557, the full amount of the notes, and for foreclosure of the vendor's lien. At the request of de-

fendant the court made findings of fact and conclusions of law to the effect that the undisputed evidence showed that 16.57 acres of the land was too high for irrigation purposes, 11.57 acres of which were sold to defendant as irrigable land at an agreed price of $120 per acre; that the defense of failure of consideration was as a matter of law a cross-action and was barred by the two-year statute of limitation. The court further concluded as a matter of law that, if he was mistaken in his conclusion that the defense of two-year limitation was a bar to the plea of failure of consideration, then the judgment should be for the plaintiff for $917.55 instead of $2,557.

Upon appeal by defendant Mason to the Court of Civil Appeals the trial court's judgment was affirmed. 232 S. W. 567.

As we construe the two opinions of the Court of Civil Appeals, that court bases its conclusion that the trial court's judgment should be affirmed upon the ground that the evidence as a matter of law will not support a judgment in favor of defendant upon his plea of failure of consideration because defendant examined the land before buying it and had the same opportunity of observation that McHenry had; that the representations of McHenry were merely expressions of opinion; and that defendant was not wholly induced to buy the land by reason of those representations.

The evidence shows that at the time of the sale defendant was a resident of Missouri and had no knowledge of irrigation or irrigable lands. The tract in question was supposed to contain 40 acres, but evidently part of it was taken up by the irrigation canal, leaving about 35 acres which were under fence. Defendant came to Texas shortly prior to the sale, and was taken upon the land by McHenry as the agent of E. V. Peterson for the purpose of making the sale. Defendant was taken over a part of the land, all of which was then "in the brush," and there appeared to be a portion of the land in the southeast corner which was somewhat elevated. Defendant testified that this portion was pointed out to him by McHenry with the assertion that it was a little bit too high to water and would make a nice yard or building site. Defendant then asked whether there were two or three acres of this high ground. McHenry hesitated and "would not say," whereupon defendant inquired, "Not more than four or five acres?" to which McHenry replied, "No; not more than four or five acres." Defendant was corroborated in this statement by the testimony of his son, who gives substantially the same version of the conversation. The testimony of these two witnesses is set out in the two opinions of the Court of Civil Appeals. McHenry denied that he made the statement or gave such reply to defendant's questions. The following spring defendant had the land cleared, but never put any of it in cultivation and never had it surveyed until after plaintiffs' suit was filed. Defendant testified that he believed and relied upon the representations of McHenry, but for which he would not have bought the land. While there was some conflict in the testimony upon the question of values, the findings of the jury and trial court upon that issue are amply sustained; and, as found by the trial court, there were all told 16.57 acres that were not susceptible of irrigation by gravity flow from the canal.

[1, 2] We think the evidence was sufficient to go to the jury upon the issue of misrepresentation of a material fact as an inducement to defendant to purchase the land and execute the notes. While the circumstances under which McHenry imparted the information that there were not more than five acres not susceptible of irrigation may be sufficient to warrant a finding that he was merely expressing an opinion, and not making a representation of fact, we think the conclusion that he was making a representation of fact is a fair inference to be drawn from the testimony. It makes no material difference, it seems to us, that the information was not volunteered by McHenry, but was given in reply to an inquiry of defendant. The fact that defendant made the inquiry of itself was an indication that he considered the amount of the irrigable acreage as important. An unequivocal answer by the seller to a question propounded by the buyer in the course of the negotiations leading up to the sale has, it seems to us, as much solemnity as a representation of fact as a voluntary statement of such fact made by the seller to the buyer without the latter's solicitation. We think this conclusion accords with the common experience of men in their dealings with each other.

[3] Nor do we think there is serious question but that defendant was not upon an equal footing with Peterson or his agent, or that he did not have equal opportunity with them of knowing the amount of irrigable land. The evidence is without dispute that he saw the land but once before his purchase, and that was the time he was taken there by McHenry; that he was there then only a short time; and that all of the land was then "in the brush." The seller is ordinarily presumed to know the quantity, character, and quality of the land which he owns and offers for sale. The land in question under all the testimony was of very little value except for irrigation; and its value as such depended upon the amount of acreage susceptible to irrigation from the adjacent canal. It can hardly be questioned but that a discrepancy of 11½ acres in the quantity of irrigable land in a tract of this size had a marked bearing upon its actual and market value and upon the attitude of a prospective purchaser. It is not probable that any one,

unless he had a trained and experienced eye in such matters, could determine merely from looking at the land just how much could be reached by gravity flow from the canal, even if it had been cleared. But with the land covered with brush it is hardly probable that even one of experience in such matters could estimate the irrigable amount of land by mere casual observation. Defendant, it is true, could have had a topographical survey before he bought the land; and in that sense he had an equal opportunity with his vendor to ascertain the irrigable quantity. But he was not bound to do so; and, if he chose to rely upon representations of his vendor, the fact that such representations were made excused him from informing himself from other sources. If such were not the rule, a misrepresentation as to the quantity of land sold or the quantity of a certain character out of the total quantity sold could never constitute the basis either for the rescission of a contract of sale or for abatement of the contract price, in the absence of some device which would prevent the purchaser from making further inquiry or direct him into false channels of information.

[4, 5] It is held by a long and unbroken line of decisions in this state that a false representation by the vendor regarding the quantity of land sold or the quantity of a particular character, made to the vendee as an inducement to purchase, which actually deceives the vendee and is relied upon by him, constitutes fraud which will entitle the vendee to relief in equity. It is not essential to the granting of relief that the vendor act dishonestly in making his misrepresentations. If the misrepresentations are made as facts, and not as mere expressions of opinion, and are calculated to and do operate as an inducement to the vendee to enter into the contract, the consequences to him are the same whether the representations were innocently or fraudulently made; and for this reason fraudulent intent is held not to be a necessary element to granting the relief. Knowledge upon the part of the vendee of the falsity of his representations and his fraudulent intent in making them may aggravate the wrong, and might give rise to exemplary damages; but absence of such knowledge and intent cannot relieve him of the consequences of a false representation made by him as an existing fact and calculated to operate and actually operating as an inducement to the contract. Misrepresentations so made will be deemed fraudulent in law; hence the doctrine of constructive or legal fraud as distinguished from a malicious or fraudulent intent in fact. This doctrine is now settled by the following, among other decisions of our Supreme Court: Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109; O'Connell v. Duke, 29 Tex. 300, 94

Am. Dec. 282; Loper v. Robinson, 54 Tex. 510; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700.

[6] And, even where there is no element in the transaction sufficient to warrant a finding of legal or constructive fraud, and the misrepresentation is the result of an honest mistake on the part of the seller, the mistake being shared in by the buyer, relief is granted upon the doctrine of mutual mistake, and the same remedies apply as in the case of actual or constructive fraud. Culbertson v. Blanchard, above; Cox v. Barton (Tex. Com. App.) 212 S. W. 652; Taylor v. Hill (Tex. Com. App.) 221 S. W. 267.

It has also been held that, where facts are pleaded showing material misrepresentation relied upon by the buyer and inducing the contract, and relief is sought on the ground of fraud, relief may be granted upon the failure of the evidence to show fraud, actual or constructive, upon the ground of mutual mistake, if the evidence will support such finding, even though mistake were not expressly pleaded as the basis for the relief. Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700.

[7] Where fraud or mutual mistake enters into a contract of this character, the buyer has an election of inconsistent remedies. He may, if he acts promptly after discovering the fraud or mistake, or within a reasonable time after he should, by the exercise of proper diligence, have discovered it, rescind the contract·and recover back the consideration if he has paid it, or, if he has not paid it, he may cancel his obligations under the contract. He must, however, in such cases, place the seller in statu quo. On the other hand, he is not bound to rescind and may elect to retain the property, in which event he is entitled to relief to the extent of his injury by reason of the fraud or mistake.

[8, 9] If he has paid the consideration, or if he has executed a negotiable instrument in payment thereof, and this instrument has passed into the hands of an innocent purchaser, he may recover against the seller the actual damage he has sustained by reason of the fraud or mistake. It is clear that in either of these cases his right of action is subject to the laws of limitation, and that limitation begins to run from the time he discovers the mistake or fraud or from the time he should have discovered it, had he exercised that diligence which the law imposes upon him.

[10] But, if he has not paid the consideration and seeks no affirmative relief, he is entitled to an abatement in the amount of his obligation to the extent of his injury, whenever his vendor or a holder of his obligation charged with notice of the fraud or mistake seeks to enforce payment of that obligation. Fraud or mistake enters into and vitiates the contract to the extent of the resultant

injury and is a defense to a suit on his obligation; and when the relief sought is only by way of defense to defeat in whole or in part the obligation for the purchase, it is not affected by statutes of limitation. This was the holding of the Court of Civil Appeals in the present case, and in our opinion it is correct. The distinction between partial or total failure of consideration of a contract by reason of fraud or mutual mistake, as a defense to an action on the contract of sale, on the one hand, and the right of action for damages for breach of or failure to comply with a contract, on the other, is clearly drawn in the following cases: Rosborough v. Picton, 12 Tex. Civ. App. 113, 34 S. W. 791; Ft. Smith v. Fairbanks, 101 Tex. 24, 102 S. W. 908; Moore v. Hazelwood, 67 Tex. 624, 4 S. W. 215; Berry v. Fairbanks, 51 Tex. Civ. App. 558, 112 S. W. 427; Payne v. Beaumont (Tex. Civ. App.) 245 S. W. 94 (writ of error refused). In the former the relief may be awarded in abatement of the price contracted to be paid, and when so sought it is purely defensive matter; whereas the right to relief for breach of contract is clearly independent of the obligation of the purchaser to pay the contract price, and relief is awarded in a suit for the price only by way of set-off or counterclaim, as to which limitation is a recognized plea. In the present case the relief sought by the defendant was only in abatement of the amount of his obligation as represented by the purchase-money notes, and was clearly pleaded only as defensive matter. It was in no sense a cross-action or counterclaim; and we think clearly the Court of Civil Appeals correctly held that it was not affected by our statutes of limitation.

[11] It is urged by defendant in error that, if the relief sought by way of failure of consideration is merely defensive to plaintiffs' suit, it was necessarily admitted by defendant in his admission of plaintiffs' cause of action under district court rule 31. While there is some divergence of view among our several Courts of Civil Appeals as to the effect of such admission in certain classes of cases, the authorities in this state are uniform in holding that the admission in the language of rule 31 extends only to essential elements which plaintiff is required to prove under his petition in order to make a prima facie case, and that matters set up in the answer which it is necessary for defendant to plead and prove in order to be availed of and which are alleged by way of confession and avoidance are not admitted under rule 31. Smith v. Bank, 74 Tex. 541, 12 S. W. 221; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663; Ins. Co. v. Baker, 10 Tex. Civ. App. 515, 31 S. W. 1072; Dry Goods Co. v. Bank, 31 Tex. Civ. App. 238, 71 S. W. 604; Frost v. Smith (Tex. Civ. App.) 207 S. W. 392; Dashiel v. Lott (Tex. Com. App.) 243 S. W. 1072; Payne v. Beaumont, above. There are quite a number of other decisions by the Courts of Civil Appeals which recognize this rule. We have found no case in which it is questioned. Smith v. Bank, above, is practically on all fours with the present case; and in the recent case of Payne v. Beaumont, in which a writ of error was denied, the issue presented was in every essential identical with the issue here. So conclusive are the authorities upon this question that we regard discussion as altogether unnecessary.

[12] Neither the pleading nor the evidence raises the issue of estoppel. The mere facts that defendant paid the interest on the notes without protest and made no complaint of the misrepresentation until after the suit was filed could not of themselves operate to defeat a just claim for relief against fraud or mistake. Such facts might be taken into consideration as circumstances in passing upon the issue of whether the defendant was actually misled by the misrepresentations and perhaps other issues in the case, but, standing alone, they did not constitute a bar to his right to relief. Had there been pleading and evidence to support a finding to the effect that the defendant, after he discovered the misrepresentation, accepted some substantial benefit or consideration from his vendor, such as a definite extension of the notes, a different question would be presented. There is some intimation in the testimony of a verbal extension of the notes or extension by correspondence; but the evidence in this regard is not clear, and the pleading was not sufficient to support a finding thereon, and, in addition, the matter was not submitted or requested to be submitted to the jury, and consequently is not in the case as now presented.

[13] The foregoing conclusions necessarily require a reversal of the judgment of the trial court and Court of Civil Appeals; but, in view of the fact that the latter court held that the evidence was not sufficient to support the defense of failure of consideration, it is necessary that the cause be remanded for new trial. The Court of Civil Appeals has the power to review the facts and to set aside a judgment where in its opinion the evidence preponderates against it, although the evidence may be sufficient as a matter of law to submit the case to a jury. Where the Court of Civil Appeals has held that the evidence is insufficient as a matter of law to support the verdict, this holding, though reversed by the Supreme Court, is tantamount to and embraces in effect a finding that the evidence is insufficient as a matter of fact; and such finding by the Court of Civil Appeals is final, and binding upon the Supreme Court. Brown v. City Service Co. (Tex. Com. App.) 245 S. W. 656.

We therefore conclude that the judgment of the trial court and the Court of Civil

Appeals should be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.