## SUNYLAN CO. et al. v. POWERS.
### (No. 9263.)

Court of Civil Appeals of Texas. Galveston. Feb. 26, 1929.

Rehearing Denied March 14, 1929.

Niday & Carothers, of Houston, for appellants.

Johnson & McConnell, of Houston, for appellee.

GRAVES, J. Appellee sued appellants for the cancellation of their written executory contract of sale to him of a lot in the Sunylan addition to the city of Houston, for the return of the money he had paid thereon with interest, and, in the alternative, for damages laid at $1,854.17, upon substantially these allegations:

(1) That, to induce him to enter into the contract, appellants falsely represented to him that a street known as Sunylan street would be opened up and run on the east adjacent to his lot, that it would be 60 feet wide, lowered at least 8 inches, and covered on an average with 6 inches of shell to be laid 16 feet wide in the middle thereof; that "they had procured a right of way for said Sunylan Street from the Sisters of Charity of the Incarnate Word, and that said street would be laid out and work begun thereon not later than September 1, 1926, and would be prosecuted with all due diligence and dispatch to completion. That the construction of said Sunylan Street, together with all of said improvements mentioned and specified in said contract, would be begun not later than September 1, 1926, and prosecuted with all due diligence and dispatch to completion, and that all of same would be completed not later than early spring, 1927. That said entire addition, and especially the property for which this plaintiff was negotiating, would be ready to put on the market for home sites by early spring following."

(2) That he believed all of such representations to be true, relied upon them as material inducement, and would not otherwise have entered into the contract for the purchase of the lot or afterwards have paid the money he did thereon.

(3) That all these representations—inclusive of the ones written into the contract itself with reference to improvements—were false, that appellants had not only failed to carry out any of their promises so made, but had not even procured a right of way from the Sisters of Charity for Sunylan street; if they ever obtained a contract for that purpose, they had forfeited it because of failure on their part to carry it out, and no such right of way could then be procured; hence performance of their undertaking had become impossible.

The improvements specified in the contract provided for cement sidewalks, sanitary sewers, and fire plugs, as well as the laying out, grading, and shelling of certain streets in the addition, which included Sunylan, except that no reference was made therein to its being 60 feet wide, the plat of the addition only showing it to be 30 feet, all of which were by its

terms "to be begun not later than September 1, 1926, and prosecuted with all due diligence and dispatch to completion." There was no averment that a mutual mistake had been made by the parties to the contract, nor any that appellants, when making them, then had no intention of carrying out their alleged statements and promises.

Appellants in reply, after general demurrer and general denial, set out the contract in full, pleaded in bar certain provisions of it relating to complaints of delays in making the improvements, charged a voluntary abandonment of his contract on appellee's part, and denied having on their own made any misrepresentations of any character. They further specified the improvements claimed to have been actually made, admitted some delays they claimed to be due to matters over which they had no control, and averred that, in the circumstances, they had been guilty of no lack of due diligence in prosecuting the improvements.

Certain special issues were submitted to a jury, No. 1 being this: "Did or did not C. B. Archer, before plaintiff signed the contract in question, represent to the plaintiff, R. E. Powers, that Sunylan Street would be sixty (60) feet wide."

The jury answered this inquiry, "He did," also subsidiary ones, by which it was found that such representation was material inducement to the appellee in entering into the contract, that he relied upon it, and would not otherwise have executed the contract at all.

There were further issues designed to elicit whether or not the improvements referred to were begun and prosecuted as provided in the contract, but it is deemed unnecessary to set them or the verdict thereon out at length; they were all answered in the negative.

Judgment for the cancellation of the contract, and that appellee recover the amount he had paid thereon, together with interest, was entered on the verdict, and these additional findings by the court:

"Counsel for defendants admitted that, at the time plaintiff R. E. Powers, and C. B. Archer negotiated the sale and purchase of the land involved in this suit, and at the time the contract in question was signed by the plaintiff and W. R. Archer, the defendants honestly intended to make Sunylan Street sixty feet wide.

"The court finds from the undisputed evidence, that when the sale of the land in question was negotiated and when said contract for the sale and purchase of said land was executed there was a mutual mistake in that the plaintiff and the defendants honestly believed Sunylan Street would be opened up sixty feet wide."

We think this determination resulted from the application of an erroneous theory of law to the undisputed evidence, and cannot be upheld; in other words, under the uncontroverted testimony heard, there was neither fraud nor mutual mistake in the case, for these reasons: While the pleading of the appellee was sufficient to charge misrepresentation of one existing fact, to wit, that he was told the appellants had procured a right of way for Sunylan street from the Sisters of Charity, he failed to prove that such a representation was ever made to him by them, both his allegations in other particulars and all the evidence heard going no further than to show that he was merely told before and on entering into the contract that Sunylan street would be 60 feet wide and would be so shelled, along with the other things likewise agreed to be done—that is, all the statements made were simply promises to do these things in the future—and there is not a scintilla of evidence tending to indicate that appellants did not then in good faith intend to fully carry out every one of them; quite the contrary appears.

It is true that up to the time of this trial the other improvements had not been completed, Sunylan street had not been made 60 feet wide, and there was sufficient evidence to have supported a finding that it never would be, because the Sisters of Charity had canceled their prior conditional agreement with appellants to donate the necessary 30 feet for that purpose on account of the latters' failure to comply with its terms by December 1 of 1926, and would not renew the same; but nonperformance of forward-looking agreements or promises in such circumstances, in the absence of a lack of intention at the time to carry them out, does not constitute fraud. Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S. W. 873; Mid-Continent Life Ins. Co. v. Pendleton (Tex. Civ. App.) 202 S. W. 769.

Indeed, the trial court expressly acquits the appellants of any fraud in its quoted finding that both sides were honestly mistaken. So that, we are left to deal only with the consequences of that interpolation.

In our view, there could not have been such mutual mistake here as entitled the appellee to a rescission, for two reasons:

(1) No then-existing or past-occurring fact was either misstated to him or misrepresented by either party, all the promises and agreements made having had, to the knowledge of both parties, sole reference to acts to be done in the future, as to which therefore neither could in the nature of things know one way or the other; in other words, that situation was not susceptible of a mistake of fact that would on its development thereafter give either party the right to wipe out their agreement touching it, because both necessarily contemplated that it was only a contingency at best they were contracting about, and that, possibly at least, it might or might not come about.

(2) The parties themselves at the time expressly recognized this inherent uncertainty from the character of the contract they were

making, and so contemplating, provided a special remedy against developments thereunder in paragraph VIII thereof, as follows: "This contract is executed in triplicate and the original copy is to be placed in escrow with the Houston National Bank of Houston, Texas, where all payments on the same shall be made and the purchaser shall, have, the right, by notice in writing, delivered to the Bank to stop the payment by the Bank to Seller of any money thereafter paid in to the Bank on this contract at any time the Purchaser finds that the Seller is not making the improvements in said action as specified in the foregoing paragraph, and until said specifications are complied with by the Seller."

The idea here advanced, that to constitute fraud or mutual mistake there must be either a misrepresentation by one of the parties or an honest mistake by both as to an existing fact, is clearly the basis for the decision in Mason v. Peterson (Tex. Com. App.) 250 S. W. 142, on which the appellee relies to sustain this judgment; the court there expressly grounds its holding upon the finding that the number of acres of the land susceptible to irrigation by gravity—flow from a nearby canal had been misrepresented as an existing fact—that is, the purchaser had been told that not over 4 or 5 acres of it could not be so irrigated, when in fact 16.57 acres could not be, an actual discrepancy of 11.57 acres; it was merely held that this misrepresentation, irrespective of any knowledge of its being untrue or any intent to deceive on the part of the maker at the time, constituted legal or constructive fraud that entitled the purchaser to relief.

In so holding, the court simply remarked that even where there is no such fraud, and the misrepresentation, that is, one as to an existing fact, is the result of an honest mistake on the seller's part, shared in by the buyer, the same relief will be granted as in the case of such fraud, citing Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Cox v. Barton (Tex. Com. App.) 212 S. W. 652; Taylor v. Hill (Tex. Com. App.) 221 S. W. 267. Every one of these is a case of like sort, being grounded upon either a misrepresentation or a mutual misapprehension as to the actual state of facts.

No stream of law can rise higher than its source, and the course of continuity of decision can never be continuously followed unless the determinative facts from which the rules flow are kept in mind; therefore, it is plain that our Commission of Appeals did not in this deliverance intend to hold that, where the evidence only develops that both parties to such a contract of sale had then in good faith been mistaken as to the happening of future events, one of them was entitled to a rescission.

■ The cancellation awarded could not properly have been based on the claimed failure to make the improvements in the time and manner specified in the written contract, because, in the provision just quoted, the appellee agreed to take care of that contingency in another way, by stopping the payments until compliance, and the bank indorsed its acceptance of the duty thereby imposed upon it. We think the remedy thus contracted for should be held to be exclusive upon that feature. 13 Corpus Juris, p. 696; Goss v. Northern Pacific, 50 Wash. 236, 96 P. 1078; Oltmanns Bros. v. Poland (Tex. Civ. App.) 142 S. W. 654.

■ While under these conclusions the appellee was not in the circumstances entitled to a rescission of the contract of sale, it does not follow that he was without remedy for the wrongs charged; indeed, his alternative action for damages for alleged breach of contract might have furnished one.

For the errors indicated, the judgment has been reversed and the cause remanded for another trial.

Reversed and remanded.