EL PASO NATURAL GAS COMPANY, a
Corporation, Appellant,

v.

The TEXAS COMPANY et al., Appellees.

No. 5084.

Court of Civil Appeals of Texas.
El Paso.

Oct. 19, 1955.

Rehearing Denied Nov. 16, 1955.

Jones, Hardie, Grambling & Howell, Harold L. Sims, Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellant.

William E. Loose, Houston, Kemp, Smith, Brown, Goggin & White, El Paso, for appellees.

HAMILTON, Chief Justice.

Inasmuch as we are reversing our position as taken on the original hearing of this case, the opinion rendered therein is hereby withdrawn and the following opinion substituted as the opinion of this court on the motion for rehearing in the above entitled cause.

This is an appeal from a summary judgment rendered by the District Court of El Paso County, Texas, 41st Judicial District. Appellees, The Texas Company and others, sued appellant, the El Paso Natural Gas Company, seeking to recover the balance alleged to be due as the purchase price of certain leases, gas rights and personal property sold by appellees to appellant under an agreement dated March 13, 1944. Appellant pleaded payment by taking, with the consent of appellees, credit for overpayments made by it to appellees for deficiencies in gas takings by appellant between October 25, 1939 and December 31, 1943, under a gas sales agreement of September 17, 1928, and amendments and supplements thereto. There is no controversy as to the amount due for purchase of the property sold by appellees to appellant except as to credit, if any, due appellant for the overpayments. Appellant claimed that the overpayments arose in this manner: Prior to appellant's purchase of the leases, gas rights and personal property under the agreement of March 13, 1944, appellant had purchased gas from appellees under the basic contract dated September 17, 1928, as amended and supplemented. This agreement obligated appellant as buyer to purchase from appellees as seller a quantity of natural gas equal to 45% of the total requirements of appellant's sixteen inch pipeline. Any deficiencies in such take were to be made up by appellant as rapidly as operating condi-

tions permitted. The supplemental agreement of October 25, 1939, further provided that should buyer (appellant) fail to make up any deficiency in gas taken after October 25, 1939, within a reasonable time, then buyer should nevertheless pay to seller (appellees) *the full value of the deficiency as though seller should actually have delivered its full quota of gas during the period in which such deficiency occurred.* The controversy revolves around the meaning of the words "full value of the deficiency." Appellant contends that the words "full value of the deficiency" do not mean 5.5¢ per Mcf. because appellees did not pay .85¢ per Mcf. royalty and production taxes on deficiency gas which they did pay on gas actually taken; that therefore "full value" means 4.65¢. The aggregate difference between these rates amounted to $140,906.12. Therefore, appellant, in offering to make settlement, withheld this sum from the purchase price due appellees for the leases, gas rights and personal property sold, and appellees refused to accept such offer of payment. This was the status of the controversy between the parties when they entered into a so-called non-waiver agreement on August 4, 1944. This agreement recites that a difference of opinion exists as to the meaning of the phrase "full value of said deficiency"; that the buyer thought that the phrase "full value of said deficiency" meant the full value of the deficiency to the seller, and therefore the buyer contended that the same should be determined by deducting from 5½¢ per Mcf. the taxes and royalties which the seller is not required to pay on account of the fact that the gas is not produced, and such saving in taxes and royalty to seller amounts to .85¢ per Mcf., leaving the value of the gas to the seller 4.65¢ per Mcf. The seller contends that by the phrase "full value of said deficiency" is meant 5.5¢ per Mcf. By the non-waiver agreement the seller agreed that the buyer in making payment at that time for the amount due seller by buyer might deduct $140,906.12 and pay to seller the difference, which the seller agreed to accept, "provided, however, it is expressly understood and agreed that such payment

by buyer and acceptance by seller after deducting said $140,906.12 shall not constitute any accord or satisfaction of seller's claim against buyer for $140,906.12, but shall be without prejudice to the rights, claims and position of the parties hereto in respect to the above mentioned controversy, and such payment by buyer and acceptance by seller shall not impair the rights or claims of either party as to the correct construction of the agreement of September 17, 1928 (and its amendments and supplements, including the agreement of October 25, 1939) and of the option agreement and side agreement."

As against appellant's asserted defense of such payment, appellees pleaded the two year statute of limitations, Vernon's Ann. Civ.St. art. 5526, which was sustained by the trial court in rendering the summary judgment.

We are of the opinion that the appellant having pled payment in defense of the cause of action sued on by appellees, that the plea of limitation is not available to appellees, since the question of limitation is determined almost totally by that certain agreement spoken of as a non-waiver agreement, and since said non-waiver agreement sets out in detail the controversy existing between the appellant and appellees, it is thought that it would be beneficial to set out Paragraph 2 of the August 4, 1944, agreement in full, as follows, to-wit:

"Prior to March, 1944, Buyer paid to Seller for said deficiency mentioned in Paragraph 1 hereof, at the rate of 5.5 cents per Mcf., and Seller accepted such payments currently as made. Beginning in March 1944, Buyer began to tender to Seller Buyer's checks in payment of the deficiency gas for certain periods subsequent to December 31, 1943. In determining the amounts of such checks tendered to Seller, Buyer multiplied the volume of the deficiency gas for the periods subsequent to December 31, 1943, expressed in M.C.F., by 4.65 cents, and deducted from the amount thus arrived at said

sum of $140,906.12, and tendered to Seller checks for the difference between said sums. Seller has heretofore refused to accept all such checks tendered for deficiency gas subsequent to December 31, 1943, Seller's reasons for doing so being: That said tenders were made at the rate of 4.65 cents per M.C.F., whereas Seller contended that said tenders should have been made at the rate of 5.5 cents per M.C.F. since said tenders were made either before the Side Agreement had been executed or before said Side Agreement became effective; and, further, because Buyer deducted the said $140,906.12. Seller hereby agrees that in making payment at this time as for the amount due Seller by Buyer under the provisions of Subdivision (ii) of Sub-Paragraph (a) of Paragraph 2 of the Side Agreement, Buyer may deduct said $140,906.12 and pay to Seller the difference, which difference Seller agrees to accept; provided, however, it is expressly understood and agreed that such payment by Buyer and acceptance by Seller, after deducting said $140,906.12, shall not constitute any accord and satisfaction of Seller's claim against Buyer for said $140,906.12, but shall be without prejudice to the rights, claims and position of the parties hereto in respect to the above mentioned controversy, and such payment by Buyer and acceptance by Seller shall not impair the rights or claims of either party as to the correct construction of the agreement of September 17, 1928 (and its amendments and supplements, including the agreement of October 25, 1939), and of the Option Agreement and of the Side Agreement."

The trial court in sustaining appellees' plea of limitation necessarily must have held that appellant's plea of payment on the cause of action sued on by appellees was in fact no more than a plea of offset, and if the settlement made under the agreement of August 4, 1944, was a mere partial payment by the El Paso Natural Gas Com-

pany to The Texas Company on the consideration to be paid The Texas Company, the trial court was correct, but it will be noted from said agreement and all the evidence that the El Paso Natural Gas Company never at any time offered settlement as a partial payment on the consideration to be paid for the properties involved, that on each and every attempt it made to pay it was strictly understood that payment was offered as the full amount due and not just as a partial payment on the consideration. On the other hand, The Texas Company did not accept such offers of settlement by the gas company until the above agreement was made. Of course, had The Texas Company accepted settlement as it had been offered, under such circumstances such acceptance would have amounted to an accord and satisfaction, and that would have put an end to the controversy. If the gas company had offered payment and made settlement to be applied on the consideration as a partial payment, then of course the plea of limitation as pled by the appellees would have been good without question, but you do not have in this case either situation existing. The gas company offered and made payment to The Texas Company in full for what was owing by it to The Texas Company; The Texas Company accepted such payment as made, allowing the deduction of the controversial $140,906.12. However, by the terms of the August 4th agreement The Texas Company reserved the right to litigate the question as to whether or not The Texas Company owed El Paso Natural Gas Company $140,906.12 for overpayment for gas in prior years. It appears to us that the question is not, as contended by appellees, whether the gas company is now making claim for offset, but as to whether or not payment was actually made back there under the August 4th agreement. If at that time The Texas Company did owe the gas company that amount of money for overpayment, then it appears that payment in full was actually made and the defense of payment is good. If, on the other hand, it shall be determined that The Texas Company did not owe the gas company said amount for overpayment, as of August 4,

1944, then The Texas Company is entitled to recover the $140,906.12. The effect of such agreement was merely that The Texas Company agreed to accept such payment as the amount due, conditioned upon its right to litigate the question of whether or not it owed the gas company for overpayment at the time the settlement was made. There was never any controversy between the parties as to what the consideration for the property was. The only controversy to be litigated was as to whether or not The Texas Company owed the gas company for overpayment as of August 4, 1944, and whether or not the gas company had a right to make the deduction of $140,906.12 in making settlement. Whatever cause of action El Paso Natural Gas Company had against The Texas Company for overpayment on August 4, 1944, the date of said agreement, the amount of such was applied by the gas company on its debt to The Texas Company with the consent of The Texas Company. The fact that the gas company agreed that The Texas Company was not to be bound by accord and satisfaction does not alter the fact that the payment as proffered by the gas company was accepted and credit was allowed subject to a right to have a determination of whether such credit was properly taken. See Vernor v. D. Sullivan & Co., Tex.Civ.App., 126 S.W. 641, 648; Mason v. Peterson, Tex.Com.App., 250 S.W. 142, 147; Shaw v. First State Bank, Tex. Civ.App., 13 S.W.2d 133, 137; Hinds v. Biggs, Tex.Civ.App., 142 S.W.2d 902, 908; Runnells County v. Gulf Oil Corp., Tex. Civ.App., 209 S.W.2d 969, 972.

The judgment of the trial court is therefore reversed and the cause remanded for trial of the cause of action on its merits.

FRASER, Justice (concurring).

The writer now concurs with the above opinion, which is of course opposite in effect to the concurring opinion filed in the original hearing by the undersigned. This change of position is due to the fact that upon careful reconsideration of the entire matter it does seem that the non-waiver agreement was carefully prepared to protect and preserve all rights and remedies of the parties therein concerned. That being true, and the appellant having vigorously urged that it maintained then and now that it had paid appellee for the property purchased, it seems only right and equitable that it should be permitted to assert its pleaded payment in the present law suit. If it is mistaken or wrong it can be decided by the trial court. While this is a complete reversal of the writer's opinion, it does seem to be both justified and necessary in view of the premises, the position of the parties and the language of the non-waiver agreement.