**O. M. MORRIS, Appellant,**

v.

**Susie STROUD, Appellee.**

No. 15163.

Court of Civil Appeals of Texas. Dallas.

Dec. 14, 1956.

Rehearing Denied Jan. 18, 1957.

Harvey C. Ford and Kent D. Allen, Dallas, for appellant.

Hassell & Hassell, Dallas, for appellee.

CRAMER, Justice.

O. M. Morris filed this suit in trespass to try title to Lot 9, Block 23, Weisenberger Gardens No. 2, City of Dallas, and for $8 per day as damages for detention of the property. Susie Stroud defended by general denial, plea of not guilty, and pled she purchased Lot 9 from Willie Lawson about August 7, 1946 for $175 then paid to Willie Lawson; that she had paid six monthly payments on the contract, when Weisenberger Gardens No. 2 refused to accept further payments and arbitrarily cancelled the contract; alleged certain representations of one Waldron, agent of Weisenberger Gardens No. 2, that the Lot would not overflow; that it did overflow; that it was worth, as it was as an overflow lot, only $200; but that if it had been as represented it would have been worth the $640 recited in the assignable contract of purchase which she bought from Willie Lawson. She prayed for judgment that Morris take nothing and that she

have judgment for the difference between the market value of the property and the sum paid by her and for $5,000 exemplary damages. Morris by supplemental petition demurred, filed special exceptions, general denial, and prayed as in his original petition.

The jury, material to this appeal, found: (a) Weisenberger or his authorized agent did represent to Susie Stroud that Lot 9 was not subject to overflow; (b) that it did overflow; (c) Mrs. Stroud did believe the representation; and (d) diminution in value of Lot 9 by reason of the fact that it did overflow was $560.

On the verdict, the trial court's judgment, here appealed from, decreed title to Lot 9 in Susie Stroud and denied all other relief to either party to this appeal and taxed the costs against Susie Stroud and other defendants not parties to this appeal.

After Morris's motion for new trial was overruled, he duly perfected this appeal, here briefing 29 points of error.

Points 1, 2, and 3 will be considered together: They assert error: (1) In rendering the judgment here appealed from because it is not supported by pleadings and evidence and is contrary to the law; (2) in modifying and changing the judgment of November 3, 1955 which was a proper judgment under the record and the trial court was without authority "to split up the judgment heretofore rendered and award Lot 9, Block 23, to Susie Stroud"; (3) the judgment of November 3 was a correct one and the court erred in changing it by rendering another and different judgment on December 23, 1955 which was not supported by the record.

Points 1, 2, and 3 were countered that "Morris failed to establish the title requisite under his pleadings" or from the common source superior to the title of Susie Stroud and the title of Susie Stroud from the common source was older than and superior to the title claimed by Morris, and Morris at the time he claims to have acquired the

property speculated upon the record and took a mere chance of title which failed; (3) the judgment was responsive to the findings of the jury and the undisputed evidence and properly replaced the judgment of November 3, 1955.

The record discloses that Lot 9 was sold by Weisenberger Gardens No. 2 under a contract to purchase for the sum of $640 payable $10 cash and $7 per month in advance until the purchase price was paid in full to Charlie Lawson and Willie Lawson. Willie Lawson was later divorced from Charlie Lawson and became the owner of the contract rights. Thereafter about December 10, 1946 she sold and assigned her rights under the sales contract to Susie Stroud who assumed the obligations thereunder. The balance due on the contract on December 9, 1946 was $502.84 as shown by exhibit No. 1 (the Sales Contract) and in the schedule of payments thereon. The exhibit also shows the balance due after the December 21, 1948 payment, the last payment or credit shown by such exhibit, was $474.39.

Susie Stroud testified with reference to her payments that the contract called for $7.50 per month; that she got behind and picked up with $10 per month. When she had paid up to $400 she sent Weisenberger two $10 bills but he did not send her a receipt therefor; they didn't come back to her; she also mailed thereafter two $10 travelers or cashiers checks and received no answer or receipt therefor. She also testified:

"Q. Now, you tell the jury you haven't paid anything, any money on any of the contracts since your boy got hurt six years ago? A. I haven't.

"Q. Now, you are claiming this is your property, and you haven't paid anything on it for six years? A. Well, I don't know that, of course. I always speak of it as mine because I intended to pay for it. Listen, I am going to tell you why I didn't pay more.

"Q. You don't have a deed? A. No, after Mr. Langford and me, we went to Mr. Morris, Langford met him, I didn't. I went to East Texas and told him—

"Q. Wait a minute, now. You haven't paid any money on this for six years? A. I am trying to tell you. I borrowed the money to pay.

"Q. You didn't pay it? A. Well, I didn't pay it because Weisenberger didn't show up.

"Q. Mrs. Stroud, this contract or whatever you had was canceled by Weisenberger? A. No, sir. I never got word. The only cancellation I ever got, he wanted to see my book, never said it was canceled, said Weisenberger wanted to see my book.

"Q. You had a copy of the contract and it said if you don't pay it will be canceled? A. Look in the book and see if there ain't a statement in there regarding this sickness and like that just the same as a statement of rent, and listen, I wouldn't have had infection if that lot had been out of the high water. I lost $4,875.00 worth of household goods and over $500.00 worth of clothes and they said we wouldn't have any high water. I got it, yes.

"Q. Did you ever pay taxes on this property? A. I paid taxes every time I paid on it.

"Q. Have you paid any taxes in six years? A. No, how could I?

"Q. Have you paid a dime of taxes to anybody? A. I haven't even had a tax statement.

"Q. You haven't tried to pay taxes in six years, and yet you claim you are trying to buy the property, don't you? A. I was trying to buy it, that is how come us in a mess. Mr. Morris give him a chance to double cross us, went to him to borrow the money and he double crossed us and took it over."

The contract involved contained the following provision: "Cancellation—If any taxes or special assessments payable by the Buyer be not paid when due, or if the monthly payments be one month delinquent (except in case of sickness and nonemployment as aforesaid), time being the essence of this contract, or failure of the Buyer to carry out any of the covenants of this contract, the Seller may, at his or her option, either declare the entire purchase price due and collectible, or they may rescind this contract to sell and convey said lot or lots and take possession thereof at their option, and in the event of rescission, under this or any other terms of this contract, all payments made by the Buyer shall be retained by the Seller not as a penalty, but as rent for said lot or lots and liquidated damages for breach of this contract, and in such event the payments provided by this contract are computed and agreed by the parties to be reasonable damages and rental money for said property, but failure or delay to exercise said option at the time of any default shall not be nor operate as a waiver of the right to exercise said option at any time thereafter at Seller's option. In cases of rescission Buyer agrees to immediately and peacefully surrender possession to Seller with any improvements made by Buyer thereon. It is further understood and agreed that in the event Buyer defaults and the Seller becomes entitled to possession under the terms of this contract, and Buyer and his heirs and assigns remain in possession of said premises after such default, the relationship of landlord and tenant shall be created and shall exist between Seller and Buyer, their heirs and assigns, and Buyer, his heirs or assigns, or any person or persons in possession under Buyer, shall become liable for, and obligated to pay, a reasonable rental thereof, payable in advance, and upon failure to pay such rental shall be subject to ejectment under the provisions of the forcible entry and detainer statute."

To the issues hereinabove summarized, Morris objected, material here, as follows: "Plaintiff objects to special issue No. 4

because Susie Stroud has no right of action against O. M. Morris for any representation made by anyone not his agent, and there is no evidence that O. M. Morris or his agent ever represented to anyone that Lot 9 did not overflow, and there is no evidence that J. H. Weisenberger or any agent of his ever was the agent of O. M. Morris. Such an issue is confusing, immaterial, irrelevant and prejudicial to plaintiff. No. 5, because there is no evidence that O. M. Morris or his agents ever represented to Susie Stroud that Lot 9 did not overflow. Such issue is not involved in this case and is confusing to the jury and prejudice to plaintiff. No. 5A, because there is no evidence that O. M. Morris or any agent of his ever made any representation to Susie Stroud that Lot 9 of Block 23 did not overflow. Such an issue is not involved in this case and is immaterial. No. 6 because there is no evidence that O. M. Morris or any agent of his ever made any representation to Susie Stroud that Lot 9 of Block 23 did not overflow. Such issue is not involved in this case and is immaterial, irrelevant, misleading, and prejudicial to plaintiff."

The issues attacked assumed that Weisenberger was the agent of Morris and no issue was submitted to the jury as to whether or not he was in fact such an agent. The burden of proof was on Mrs. Stroud to establish by a preponderance of the evidence that Weisenberger was such agent of Morris at the time of making the statement involved.

Under the record here it is plain that Weisenberger was not an agent of Morris, and Weisenberger's representations, acts, statements, etc., were not chargeable to Morris. However Morris was charged with notice of any and all legal rights which Susie Stroud had in the property since she was in possession at all times involved here. Therefore Morris' title and rights were and are subordinate to and subject to such rights as Susie Stroud had at the times material here.

Points 1, 2, and 3 are overruled.

Points 4 to 8 inclusive assert error: (4) In submitting issue 4 because Mrs. Stroud had no cause of action against Morris under the record; (5) in submitting issue 5 because not raised by the record; (6) in submitting issue 5A because not raised by the record; (7) in submitting issue 6 because not raised by the record; (8) in submitting issues 1 to 15 over objection that none of the issues were supported by the pleadings, evidence, or the law.

Susie Stroud counters that issue 4 was responsive to the evidence and issues 5, 5A, and 6 were responsive to the pleadings and the evidence, "it being undisputed that the Lot did overflow and the jury finding the amount of diminished value; there being no objection to the manner of submitting the issues of damage in this way and no different charge being requested by plaintiff." (8) That point 8 is too general and indefinite; the issues to and including 7A were favorable to Morris and he will not be heard to complain as to any of them.

At the outset we must hold that Morris was not an innocent purchaser since Susie Stroud had possession of the property at all times material to this action and possession was notice of all her legal rights therein. The record also shows the deed to Morris contains an exception to the warranty. Such express exception being that the property was warranted as to all persons, except as to all parties in possession.

Susie Stroud testified she paid $400 plus two $20 payments, or a total of $440 and has paid nothing more in cash. She depends entirely upon the credit for damages caused by the overflow of Lot 9. Her contract was canceled because of alleged defaults in payment of the contract price of $640.

There is no question that if the unliquidated damages for fraud can be, and were properly credited on the $640 purchase price, Susie Stroud had paid for, and should

recover Lot 9; but on the other hand, if such unliquidated damages are not a proper credit on the payments on the purchase price, then Susie Stroud is not entitled to recover here and the trial court's judgment was not a proper one. In Mason v. Peterson, 250 S.W. 142, the Commission of Appeals (holding approved by our Supreme Court) held in substance that where fraud enters into a contract of this character, the buyer has an election of inconsistent remedies. He may rescind and recover the consideration paid, if any; if he has not paid the consideration, he may cancel the obligation under his contract; or if he has not paid the consideration and seeks no affirmative relief, he is entitled to an abatement in the amount of his obligation to the extent of his injury, whenever his vendor or the holder of his obligation charged with notice of the fraud seeks to enforce payment of the obligation or to cancel the purchase contract.

■ The fraud here entered into and vitiated the contract to the extent of the resultant injury, and is a defense to this action. Under the facts, although the amount of the damages for fraud had not been exactly ascertained, such amount could be and was ascertained by the jury here and was properly credited against such debt by the trial court.

Points 4 to 8 inclusive are overruled.

Points 9 to 12 in substance assert error: (9) In vesting title to Lot 9 in Susie Stroud on the theory that she had paid its value as diminished by the overflow, because not authorized by the record or under the law; (10) in holding Morris benefited by the fraud perpetrated by one Waldron, salesman for Weisenberger, special agent for Stemmons, none of whom were agents of Willie Lawson, and there is no evidence that Morris benefited by any dealings with Susie Stroud which took place years before Morris received his deed to the Lot; (11) in holding that title to Lot 9 vested in Susie

Stroud prior to the cancellation of the Willie Lawson contract, which was executed prior to the deed from Stemmons to Morris because title does not automatically vest in and pass to the defrauded party who has only a personal right to sue for damages or rescission. The law does not authorize the awarding of title to real estate to the defrauded party. (12) Error in holding possession constituted title because the law gives no title to realty to a person to whom misrepresentations have been made.

■ It is true, as Morris contends, that the fraud found by the jury was perpetrated by Waldron who was a salesman of Weisenberger, and a special agent of Stemmons, none of whom were agents of Willie Lawson, from whom Susie Stroud purchased the sales contract; and there is no evidence that Morris benefited by any of the dealings of Susie Stroud in connection with Lot 9 which took place years before he received his deed. However, such facts are not controlling here. Susie Stroud, as we have stated above, was at all times material here in possession of Lot 9, and her possession was notice to Morris of any right she might have under her contract, or otherwise, and Morris was not therefore an innocent purchaser of Lot 9, as against any right Susie Stroud had in the property. There is no pleading of an estoppel against Susie Stroud. Morris therefore took title subject to any and all valid claims or rights which Mrs. Stroud had in Lot 9. Of course other questions not submitted to the jury are deemed found by the court in favor of the verdict and judgment. Points 9 to 12 inclusive are overruled.

Points 13 to 16 assert error: (13) in holding Susie Stroud's title was superior to Morris who purchased the lot long after Susie Stroud's contract was canceled for failure to make monthly payments, she not having made payments for more than six years before Morris purchased the lot from Stemmons; (14) in holding Morris was

charged with fraudulent acts of one Waldron who was not his agent; (15) in holding Morris assumed the personal liabilities of Stemmons, Weisenberger, Waldron and Willie Lawson when he purchased Lot 9 from Stemmons, since none of said parties were agents of Morris and Morris did not assume their liability to Susie Stroud; (16) in holding Susie Stroud could recover title against Morris, vendee of Stemmons, on the ground that Waldron, agent of Weisenberger, who was an agent of Stemmons, told Susie Stroud, who became assignee of Willie Lawson, who sold the contract he acquired from Weisenberger, that said Lot 9 did not overflow; because Susie Stroud held only a contract to buy the property and no deed was given to her. The right of a defrauded holder of a contract to buy real estate is a common-law action for damages or for rescission.

Countered by appellee that: (1) The ineffective attempt to cancel the contract of Susie Stroud after her title had become fully vested under the finding of the jury in response to special issue No. 6 was without effect upon such title; (2) the trial court's holding was that Morris took only the title of his grantor and since, under the finding of the jury and the evidence, Weisenberger and Stemmons & Russell had no title, Morris had no title and could not recover of Susie Stroud.

What we have said under points is applicable here. Morris was not an innocent purchaser.

Susie Stroud claimed title under the contract and the payment of the purchase price by cash payments, supplemented by her damages growing out of alleged fraud in the representations of Weisenberger's agent. Her possession of the lot was notice of her claimed offset on the amount she owed, and the cause in the District Court was tried and submitted to the jury by the court on that theory. No other issues are shown by the record here to have been requested by any party hereto and refused by the court.

As between Susie Stroud and Morris, the jury having found the issues submitted favorable to Susie Stroud, she was entitled to the judgment rendered by the trial court.

Points 13 to 16 are overruled.

Points 17 to 24 assert error: (17) In awarding Lot 9 to Susie Stroud because she could not recover from the holder of the superior title, Stemmons, whom she did not sue, or from Morris, his vendee, until she pleads and proves a reason for not timely paying the consideration in the sales contract she acquired from Willie Lawson; (18) in holding Stemmons lost title to Lot 9 and that his title automatically vested in and passed to Susie Stroud, and Stemmons had no title to convey to Morris because some one told Susie Stroud that Lot 9 did not overflow, and title is not lost because of representations as to quality and the only right of a defrauded purchaser of realty is to sue for damages and not for title; (19) in holding Susie Stroud could assert title against Morris on account of fraud of an agent of Stemmons; (20) in holding Lot 9 automatically passed to and vested in Susie Stroud because she paid all the lot was worth, but not the contract price. A purchaser is not entitled to an abatement in the contract price except in the case of a deficiency of quantity; (21) in holding Susie Stroud could assert against Morris the fraud of the agent of Stemmons without holding Stemmons a necessary party to the suit; (22) in holding a right of action for fraudulent representations gives the remedy of asserting title to real estate; (23) in holding Weisenberger's agent could bind Stemmons, Morris, Willie Lawson and everyone he came in contact with when it was not shown what authority he had to bind anyone; (24) in awarding Lot 9 to Susie Stroud in the face of the record because Lot 9 was sold under contract March 7, 1945, by Weisenberger Co. to Charlie and Willie Lawson, and the assignment to Susie Stroud years later, Willie Lawson at that time assuming the obligation and payments under the contract, and at a time when the

last payment was due (Dec. 21, 1948) and where she admitted she had made no payments on the contract in over six years before the contract was canceled and Lot 9 sold to Morris. Countered that the holding of the trial court was simply that Morris took only the title of his grantor, since under the evidence and findings Weisenberger, Stemmons and Russell had no title and could not recover title from Susie Stroud, and the ineffective attempt to cancel the contract of Susie Stroud after her title became fully vested, under the jury finding to issue 6, was without effect upon such title.

It is without dispute that Susie Stroud was in default on the payments on Lot 9; however she claimed she had been misled by representations amounting to legal fraud to the extent that if a reasonable sum be allowed for such damage as payment on the contract she would owe nothing on her contract; and the judgment rendered by the trial court follows that theory. The only question is whether or not the contract price could, or can, be reduced by the unliquidated damage growing out of the alleged fraud, when the amount thereof was settled by the jury verdict, and judgment based on that verdict. We are of the opinion that it could. Mason v. Peterson, supra.

Points 17 to 24 inclusive are overruled.

Points 25 to 28 inclusive assert error in (25) awarding Lot 9 to Susie Stroud, because she claimed she was defrauded many years after she breached her contract, for failure to make her payments on the lot to Weisenberger, and Weisenberger's cancellation of her contract for such failure, and the sale of the lot thereafter to Morris; (26) awarding Susie Stroud title to Lot 9 because the evidence does not show anyone made false representations to her, knowing same to be false and with the intention of persuading her to act upon the representations, and there being no evidence to show she acted thereon; (27) in awarding Lot 9 to Susie Stroud since, if she was

defrauded, she only had a common-law action for damages for breach of, or to rescind the contract for failure of consideration, and could not sue for the title; and (28) in awarding Lot 9 to Susie Stroud because Morris could not be charged with fraud of someone not his agent. Countered that (a) the ineffective attempt to cancel the contract of Susie Stroud, after her title had become fully vested under the jury findings, was without effect, and (b) the trial court's holding was that Morris took only the title of his grantor, and since, under the jury's findings, Weisenberger, Stemmons and Russell had no title, Morris, holding under them, had no title, and could not recover.

Our discussion under other points is applicable here. The deed to Morris contained a provision, immediately following the warranty, as follows: " * * * except the rights of party or parties in possession thereof." And Morris took subject to Susie Stroud's rights.

Points 25 to 28 inclusive are overruled.

Point 29 asserts error in submitting issue No. 4 over objection because there is no pleading, and no evidence, that either Willie Lawson or Waldron was at any time a general or special agent of either Stemmons or Morris with authority to bind either by a fraudulent representation; on the contrary the pleadings of Susie Stroud is that the representations were made solely by Willie Lawson and one Waldron, and the only evidence is that the statement was made by Willie Lawson only. There is no evidence she made any statements trying to induce Susie Stroud to buy said contract from her, and that she was not an agent. Appellee counters that issue 4 was directly responsive to the evidence and not to have given it would have been an erroneous disregard of Susie Stroud's legal rights.

As stated under other points Morris took under a deed which expressly excepted from the warranty, " * * * the rights of party or parties in possession

* * *", and Susie Stroud was in possession of Lot 9 at all times involved here.

Point 29 is overruled.

Finding no reversible error in the trial court's judgment, it is

Affirmed.